[L. A. No. 9584. In Bank.—May 28, 1928.]

I. M. HALEY et al., Appellants, v. A. BLOOMQUIST et al., Respondents.

Morris Abraham and Charles I. Rosin for Appellants.

D. K. Gault and Schweitzer & Hutton for Respondents.

THE COURT.—As stated by us in the memorandum of opinion in action L. A. No. 10253, *Bloomquist* v. *Haley, ante,* p. 251 [268 Pac. 367], this day filed, we are in full accord with the opinion of the district court of appeal in and for the second appellate district, second division, written by Mr. Justice Craig, in this action, and we adopt the same as the opinion of this court, which said opinion reads as follows:

"Pursuant to stipulation three appeals in suits between the same parties and involving interrelated matters have been herein briefed together. The one which will be the subject of this decision is designated in the complaint as an action for money, in which I. M. Haley and T. E. Haley, husband and wife, are plaintiffs, and A. Bloomquist and his wife, Hattie Bloomquist, are defendants.

"The following statement of facts is intended to suffice in that regard for the decision of all three appeals: On January 31, 1923, A. Bloomquist and Hattie Bloomquist owned a certain hotel in the city of Los Angeles, known as the St. George. On that day they leased it to Jack Zeller for the period of ten years, at a rental of $1,150 per month. As a part of the transaction Zeller executed his promissory note for a total rental amounting to $138,000, and as security therefor gave a chattel mortgage on the furniture and lease; he also purchased from the Bloomquists the furniture and furnishings of the hotel, and gave his promissory note for

$24,500, payable in installments of $500 per month. This note was also secured by a chattel mortgage on the furniture and furnishings. Later, Zeller assigned both his interest in the furniture and in the lease to I. M. Haley, the appellant in these cases, who assumed the obligations of his assignor, to make the payments above mentioned. Haley paid installments on the furniture only until January, and the rent until May, 1926. On February 11, 1926, appellant held a public auction to sell the furniture and furnishings and lease of the hotel.

"At this point the parties disagree as to what took place. Appellants' contention is that Bloomquist bid $19,000 at the sale and became the purchaser. Respondent A. Bloomquist insists that he permitted the auctioneer to announce him as bidder and purchaser merely to prevent the property being sold too cheaply, and that it was understood between the parties that he was not required to take the property, and was not in fact to be regarded as buying it, and claims that he had no intention of doing so. There is evidence that respondent A. Bloomquist first authorized a bid of $17,000; someone else bid $18,000; the auctioneer then importuned Bloomquist to bid $19,000, which he refused to do; after that the auctioneer announced that Bloomquist had offered $19,000, at the same time stating privately that he need not take the property. However, Bloomquist signed the customary certificate of sale. Thereafter, on a number of occasions, Haley demanded of Bloomquist and of Hattie Bloomquist the payment of the $19,000, after deducting therefrom the amounts then due on the furniture. The Bloomquists at all these times refused to comply with the demands. After May, 1926, Haley refused to pay further rent, but continued to occupy the premises. As before stated, the Bloomquists did not pay as demanded, *nor did they take possession of the hotel.* Haley then instituted suit for $19,000, with interest thereon from February 11, 1925, less $8,500, the amount still due on the $24,500 note. This is the purpose of action number Civil 5519. A judgment of nonsuit was entered as to Hattie Bloomquist, and at the end of the trial judgment was rendered for the defendant A. Bloomquist.

"If the respondents' version of the conversation at the auction is taken to be true, there can be no doubt that

,fraud was perpetrated in the purported sale to Bloomquist. According to the testimony of several witnesses, the auctioneer, Byrens, induced Bloomquist to make a sham bid and to become a party to a fake sale. Such a transaction is against public policy, and courts will refuse to give relief to any party thereto. (*Dealey* v. *East San Mateo Land Co.*, 21 Cal. App. 39 [130 Pac. 1066].) But respondents insist that they were not parties to whatever may have been said and agreed between Byrens and Bloomquist. Upon this question there is a direct conflict of the evidence. Certain witnesses stated that neither T. E. Haley nor I. M. Haley was present when the matter of Bloomquist's bidding was discussed, but Bloomquist testified that at the time 'two feet away was standing Mr. Haley.' In answer to a question by the court, Mrs. Bloomquist testified that Haley was present when the conversation in question took place. Another witness, Mrs. Margaret Hutton, also corroborated the Bloomquists both as to the arrangement between Byrens and Bloomquist, and the fact that T. E. Haley was present. Appellants point out that no witness testified that Haley took part in the conversation, and that certain of these witnesses gave other evidence contradictory to that to which reference has been made. These are considerations which might affect the credibility of witnesses and the weight to be given their testimony, but which, of course, the trial court alone had a right to take into account.

"It is next contended that there is no evidence to support the finding that Bloomquist had no intention of buying the property; no evidence to support the finding that Bloomquist bid solely for the purpose of protecting the interest of Haley and preventing a sale at an adequate price; and no evidence to uphold the finding that the agreement was signed by Bloomquist without consideration. Bloomquist himself testified that he had no intention of purchasing the property. The testimony of witnesses that Byrens in the presence of Haley urged Bloomquist to bid because Haley 'is your tenant; you ought to help him out,' to which Bloomquist replied, 'All right,' and that later Byrens stated that Bloomquist did not 'have to take it; just bid it'; following which Byrens announced that Bloomquist had bid $19,000, and the latter finally signed the certificate of sale. This evidence, and more of a similar char-

acter, is amply sufficient to justify the second finding to which reference is above made. The same evidence warrants the finding that the agreement was signed by Bloomquist without consideration, since the evidence permits the conclusion that the entire transaction was fraudulent.

"It is said by appellants that respondents (1) were estopped to assert facts constituting the fraud in this case; (2) that the oral agreement was superseded by the writing which cannot be varied by parol; (3) that appellants have not alleged the fraudulent part of the agreement, and it is only respondents who have sought to rely upon it, and therefore that the latter will not be permitted to profit by their own turpitude. Each of these considerations is a false quantity in a case of this character. We are here concerned with a fraud, not against any individual, but against the public. The rule is well stated in *Dealey* v. *East San Mateo Land Co., supra:* 'It makes no difference how or when the fact was brought to the attention of the court that the contract sued upon is against public policy. Neither does it matter whether or not one of the parties raises the question of its illegality upon that account, but courts of law and of equity, as the true character of such a contract is disclosed, refuse to permit themselves to be used in settling a controversy arising out of such a contract.' This decision cites many authorities to the effect that the court must *sua sponte* refuse relief to either party to an agreement which contemplates a fraud upon the public or which is void as against public policy.

"Certain rulings of the trial court upon the introduction of evidence are mentioned by appellants, but no attempt is made to point out any prejudice which may have resulted therefrom. The rulings in question under this head, if considered to be error, become unimportant in view of our decision upon the principal legal issue presented. We find no other points requiring decision, and no error of a substantial character."

The judgment is affirmed.