[Civ. No. 6091. Fourth Dist. Mar. 1, 1961.]

STATE OF CALIFORNIA, Respondent, v. HOMER A. HANSEN, Appellant.

Conron, Heard & James and Calvin H. Conron, Jr., for Appellant.

Stanley Mosk, Attorney General, and Robert Burton, Deputy Attorney General, for Respondent.

COUGHLIN, J.—This is an appeal from a judgment in favor of the plaintiff, the State of California, in an action for ejectment and injunction. The question involved concerns the right of an individual to go upon state-owned land and, without express consent to do so, develop water thereon, construct a pipeline across such land and, by means of such pipeline, appropriate the water so developed to a use upon his own land.

Some time in mid-1956 the defendant discovered a spring in a ravine on a section of state-owned land in the desert area of Kern County. The terrain in this area is hilly and rugged. Water from this spring did not flow off the state land; merely moistened the ground thereabouts; and was not the source of any water course. The defendant owns land which completely surrounds the section in question. The state-owned land was acquired from the United States Government in 1895 under a federal grant for school purposes. (10 U.S. Stat. 244.) In October 1956 the defendant made an applica-

tion to the State Water Rights Board for a permit to appropriate the water from this spring, as unappropriated surplus water, for domestic and stock-watering uses on his land. A permit never was granted because the defendant could not establish a right of access to the spring in question. The state refused to grant such a right.

At the time defendant made his application to appropriate the water from the spring, a proceeding was pending by which the state desired to effect an exchange of the section of land upon which this spring was located for other government-owned land. The defendant learned of this fact when he sought to obtain a pipeline easement over the section in question through the Los Angeles office of the Bureau of Land Management, United States Department of Interior; was told that he could not file a request for an easement until the pending exchange proceeding had been completed; and that the State of California then owned the section. In his application to the State Water Rights Board the defendant stated that he had filed a request with the Department of Interior for a right-of-way to secure access to the spring. Obviously this was untrue. Later the state's request for an exchange of lands was withdrawn and the proceeding with respect thereto was terminated. In the meantime, the defendant proceeded to develop the spring by digging three trenches in the ravine where it was located, placing three porous pipelines in these trenches, and constructing a water sump approximately 12 inches in diameter by 18 inches deep into which the three pipelines emitted. The expenditure involved approximated $262. He also laid a pipeline across the section to his land, on account of which he expended $1,835.97. Additional expenditures in connection with the use of this water, apparently for improvements off the state property, totalled $2,414.30. A conservation district contributed $1,500 of the amount expended.

Other than by his application to the State Water Rights Board, the defendant never communicated with any state officials respecting his intention to develop the spring or lay the pipeline from it to his property. In his water permit application he stated that construction work would commence "30 days after approval."

After the proceeding for an exchange of lands was terminated the state brought this action against the defendant to eject him from its property and to enjoin him from continuing to convey water therefrom. The defendant filed an

answer and a cross-complaint asking that he be given a right-of-way across the state land and that the state be awarded the fair value of this right-of-way. Judgment was rendered in favor of the state awarding it possession of such land together with damages in the sum of $100, and enjoining the defendant from diverting or using any water from the spring located on that land. The defendant has appealed from this judgment.

Primarily the defendant contends that he had an implied invitation from the state to go upon the section of land in question; develop the spring thereon; and appropriate the water therefrom as excess water. He claims that by article XIV, section 3, of the State Constitution, being the constitutional amendment adopted in 1928, members of the general public are invited to go upon unoccupied state-owned lands and appropriate therefrom any surplus water thereon. The water in question was not being used and the land upon which the spring was located was not occupied. However, the constitutional provision relied upon cannot be given the meaning attributed to it by the defendant. This provision expresses a state policy with respect to the use of water. The defendant places particular reliance on the statements therein that ''the general welfare requires that the water resources of the State be put to beneficial use to the fullest extent of which they are capable, and that the waste or unreasonable use . . . of water be prevented,'' and ''This section shall be self-executing, and the Legislature may also enact laws in the furtherance of the policy in this section contained.'' It is argued, in substance, that the water in question was being wasted because it was not being put to a beneficial use; that it is the expressed policy of the state that water should be put to beneficial use and not be wasted; and, therefore, the defendant was invited to come upon the state's property and use the water to keep it from being wasted. To accept this argument would do violence to the intent of the constitutional amendment and place all state-owned lands in a chaotic status. Merely to assert, as the defendant does, that the constitutional provision in question raises the implied invitation upon which he relies does not establish its truth. He cites no authority and directs our attention to no language in the constitutional provision which supports his position. The opening statement of that provision, heretofore quoted, is the expression in general terms of a need to put water to a beneficial use and to prevent its waste. As a declaration of policy this expression

applies equally to water upon privately owned land as well as to water upon publicly owned land, yet, in his brief, the defendant readily admits that he has no invitation to go upon privately owned land to develop and appropriate its water.

 The waste of water which is denounced by the constitutional amendment under consideration is its use ''by a riparian owner under an asserted, and theretofore protected right to compel the waters of the stream, without any benefit to himself, to flow to a lower level and on to the sea when otherwise a beneficial use could be made of the same.'' (*Meridian, Ltd.* v. *City & County of San Francisco,* 13 Cal.2d 424, 447 [90 P.2d 537, 91 P.2d 105].) The primary purpose of the amendment was to modify the existing riparian doctrine of this state, and apply the rule of reasonableness of use to water controversies between a riparian owner and an appropriator, thus extending the application of that rule to every water right and every method of diversion. (*Peabody* v. *City of Vallejo,* 2 Cal.2d 351, 367 [40 P.2d 486] ; *Miller & Lux* v. *San Joaquin L. & P. Corp.,* 8 Cal.2d 427, 435 [65 P.2d 1289].)

 By constitutional mandate the proceeds of all lands granted by the United States to the State of California for school purposes shall be placed in a fund and ''inviolably appropriated to the support of common schools.'' (Cal. Const., art. IX, § 4.) It has been stated as a ''well-established principle that nothing can be taken by implication against the state, that it will not be presumed to have intended to divest itself of its property, unless such intent is expressed in terms or necessarily implied from the words used.'' (*Patton* v. *City of Los Angeles,* 169 Cal. 521, 532 [147 P. 141] ; *Clark* v. *City of Los Angeles,* 160 Cal. 30, 39 [116 P. 722] ; *Oakland* v. *Oakland Water Front Co.,* 118 Cal. 160, 171 [50 P. 277].) To imply the invitation which applicant draws from the constitutional amendment might well create a set of circumstances which would render school lands of no value to the schools of the state and defeat the purpose of the grant by the United States and of the mandate which directs that the proceeds therefrom shall be inviolably appropriated to school support.

 The defendant's contention that he was not a trespasser is based on a twofold premise, i.e., (1) that he impliedly was invited to go upon the plaintiff's property for the purpose of appropriating water from the spring in question, and (2) that he had a right to appropriate such water because it was not being put to a beneficial use. By our discussion with

respect to the first premise we are not to be understood as accepting the second premise. ▮▮ With respect to a spring which has no natural outlet,

". . . the owner of the land in which it lies, under ordinary circumstances, owns the water as completely as he does the soil." (*Simons* v. *Inyo Cerro Gordo Co.*, 48 Cal.App. 524, 542 [192 P. 144] [by the Supreme Court on denial of Petition for Hearing]; *San Francisco Bank* v. *Langer*, 43 Cal.App.2d 263, 268 [110 P.2d 687].)

▮ The water right of an overlying land owner "is based on ownership of the land and is appurtenant thereto." (*City of Pasadena* v. *City of Alhambra*, 33 Cal.2d 908, 925 [207 P.2d 17]; *cf. Miller* v. *Bay Cities Water Co.*, 157 Cal. 256, 279 [107 P. 115, 27 L.R.A. N.S. 772].) The constitutional amendment upon which the defendant relies does not purport to change these concepts. (*City of Pasadena* v. *City of Alhambra*, *supra*, 33 Cal.2d 908, 925; *Hillside Water Co.* v. *City of Los Angeles*, 10 Cal.2d 677, 686 [76 P.2d 681].)

▮ Furthermore, even if the water in question were subject to appropriation, the defendant was not entitled to any thereof as he had not obtained a permit from the State Water Rights Board (Wat. Code, § 1225; *Crane* v. *Stevinson*, 5 Cal.2d 387, 398 [54 P.2d 1100]), and, by statutory declaration, any diversion of such water was a trespass subject to injunction. (Wat. Code, § 1052.) It would be unreasonable to conclude that the defendant impliedly was invited to construct a pipeline across the plaintiff's property for the purpose of exporting water which he had no right to appropriate and which could be enjoined.

▮ The defendant also advances the theory of equitable estoppel in support of his position; claims that the state is estopped to deny that he was given permission to go upon its land because it remained silent while he expended in excess of $4,000 in connection with the subject water development. Assuming for the sake of argument that the doctrine of estoppel might apply against the state (*cf. Patton* v. *City of Los Angeles*, *supra*, 169 Cal. 521, 532), there is no proof which will support the essential elements of such an estoppel. The defendant knew that the State of California owned the land upon which he was making these improvements but he never communicated with any state official about the matter. The state had no knowledge of his activities until the improvements had been made. In his application to the State Water Rights Board it was stated, in substance, that he did not intend to

do any development work until "30 days after approval" of his application. The application never was approved.

 "One relying on a plea of estoppel must have been ignorant of the true state of facts and must have been intentionally misled by the act of the other to his injury." (*Moss* v. *Underwriters' Report, Inc.,* 12 Cal.2d 266, 273 [83 P.2d 503]; *Lusitanian-American Development Co.* v. *Seaboard Dairy Credit Corp.,* 1 Cal.2d 121, 128 [34 P.2d 139].)

In this case there was no ignorance of the true state of facts by the defendant, nor any intentional misleading by the plaintiff.

 The defendant also contends that the judgment granting an injunction should be reversed because the state has been benefited and not damaged; that no irreparable injury has occurred; and reliance is placed upon the rule that an injunction will not be granted to restrain a trespasser merely because he is a trespasser, citing 28 American Jurisprudence 637.

 "It is settled that a trespass of a continuing nature, the constant recurrence of which renders the remedy at law inadequate, unless by a multiplicity of suits, affords sufficient ground for relief by way of injunction." (*Slater* v. *Pacific American Oil Co.,* 212 Cal. 648, 655 [300 P. 31].)

 The facts in this case bring it within the quoted rule. Moreover, the evidence established that the subject property was now for sale; that the plaintiff had received bids therefor; and, by stipulation, that if the defendant was not diverting water therefrom it could be used thereon and would increase the price for which the plaintiff could sell the same. The judgment granting the injunction was proper.

 By his cross-complaint the defendant sought to have a right-of-way set over to him under the principle of inverse condemnation. He argues that the constitutional amendment seeking the preservation of water made him an agent of the state for that purpose and entitles him to condemn an easement upon the plaintiff's land to effect the same. The argument is ingenious but unsound. His contention would lead to the absurd result of the state suing itself to obtain a right-of-way. Obviously the plaintiff seeks the use of state land and the water thereon for purely private purposes, as is disclosed by his application to the State Water Resources Board, and the power of eminent domain may not be exercised for that purpose. (*Miller* v. *City of Palo Alto,* 208 Cal. 74, 77 [280 P.

108] ; *Beveridge* v. *Lewis,* 137 Cal. 619, 621 [67 P. 1040, 70 P. 1083, 92 Am.St.Rep. 188, 58 L.R.A. 581] ; *People* v. *Oken,* 159 Cal.App.2d 456, 461 [324 P.2d 58].)

 In the closing paragraph of his opening brief the defendant states that in allowing damages where none were prayed for in the complaint, nor proven, the court violated basic rules of procedure. No authorities are cited in support of this statement and it is evident that any objection to the award of damages is not made the basis for a reversal.

 Damages may be awarded in a contested case even though not prayed for in the complaint. (Code Civ. Proc., § 580; *Vaughn* v. *Jonas,* 31 Cal.2d 586, 606 [191 P.2d 432] ; *Goldsmith* v. *Board of Education,* 63 Cal.App. 141, 145 [218 P. 296].) The proof sustains the $100 award on the basis of nominal (*Davidson* v. *Devine,* 70 Cal. 519, 520 [11 P. 664] ; *Creighton* v. *Evans,* 53 Cal. 55, 56; *Attwood* v. *Fricot,* 17 Cal. 37, 43-44 [76 Am.Dec. 567] ), actual (Civ. Code §§ 3333, 3334; *Wright* v. *County of Sonoma,* 156 Cal. 475, 478 [105 P. 409, 134 Am.St.Rep. 140] ; *Herond* v. *Bonsall,* 60 Cal. App.2d 152, 156 [140 P.2d 121] ; *Dandoy* v. *Oswald Bros. Paving Co.,* 113 Cal.App. 570, 572 [298 P. 1030] ), or punitive damages. (*Griffin* v. *Northridge,* 67 Cal.App.2d 69, 76 [153 P.2d 800].)

The judgment is affirmed.

Griffin, P. J., and Shepard, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 26, 1961.