[S.F. No. 24624. May 17, 1984.]

NEVADA NATIONAL LEASING COMPANY,
Plaintiff, Cross-defendant and Appellant, v.
LEE HEREFORD, Defendant, Cross-complainant and Respondent.

**COUNSEL**

Terry D. Graff, Wool, Richardson & Graff and Richard G. Hyppa for Plaintiff, Cross-defendant and Appellant.

Daniel M. Feeley, Michael A. Lilly, Feeley & Lilly and William J. Oppenheimer for Defendant, Cross-complainant and Respondent.

**OPINION**

**REYNOSO, J.**—Nevada National Leasing Company (Nevada National), as owner, repossessed several pieces of heavy construction equipment. Thereafter, it sold the equipment at an auction. Unbeknownst to any other bidders, the owner and the auctioneer agreed that the owner would bid on the auctioned items to increase the sales prices. Does the California Uniform Commercial Code permit such a secret arrangement? We hold that it does not.

Under the California Uniform Commercial Code, section 2328,[1] the buyer at an auction for the sale of goods is protected from undisclosed, competitive bidding by the owner and seller of the auctioned goods. The statute's purpose is to protect buyers from unfair and commercially unreasonable tactics by the seller designed solely to boost the sale price. The only exception to this rule of commercial law occurs in the case of a "forced sale." Because that critical term, "forced sale," is not defined in the code, we are called upon to determine its meaning in the context of the case at bench.

The precise issue presented is whether the voluntary sale by the owner-seller of repossessed leased goods constitutes a "forced sale" by the seller

---

[1]Unless otherwise indicated all references are to the California Uniform Commercial Code.

within the meaning of section 2328, subdivision (4).[2] As we shall explain, we conclude that such a sale is not a "forced sale" and that therefore the exception of section 2328, subdivision (4) does not apply. Accordingly, Nevada National, as the lessor-seller and owner, was prohibited from secretly bidding on its own goods at the auction at which they were being sold. Under section 2328, such bidding is prohibited unless prior to the auction, the seller first notifies the buyers of the seller's intent to bid on its own property. Since Nevada National bid on its own goods and failed to disclose its intent to bid, it violated section 2328.

## I

Lee Hereford, cross-complainant and defendant below, was the successful bidder on three items of construction equipment sold at an auction sale. Nevada National, the owner, had leased a trailer and two backhoes to two lessees, neither of whom is a party to the instant suit. Had the lessees complied with all the terms of their construction equipment leases, they would have had the option to purchase the equipment or return it to Nevada National. However, the two lessees defaulted and Nevada National sued on the contracts and was awarded possession by the Nevada state court.

Instead of re-leasing the equipment, Nevada National hired the Construction Equipment Auction Company (Equipment Auction) to sell the three pieces of equipment at an auction in San Jose, California. William Linke, the credit manager of Nevada National, arranged the sale with the owner of the auction company, Cliff Schick. During a conversation with Schick, Linke expressed his concern that the auction might fail to bring Nevada National reasonable sales prices. Later, in a separate conversation, Linke stated his intention to bid on the items owned by Nevada National in order to assure receipt of prices acceptable to him. Schick agreed with this plan and assigned Linke a bidding number. At trial, Linke testified that Nevada National had made this choice even though it was aware it could have withdrawn the goods from the auction. There is absolutely no indication in the record that Nevada National was bound to accept the highest bid offered. Additionally, Nevada National gave the auction company permission to sell Nevada National's equipment prior to the auction if an acceptable price were offered.

---

[2]By its own terms, section 2328 applies only to sales of goods. Subdivision (4) states in full that: "If the auctioneer knowingly receives a bid on the seller's behalf or the seller makes or procures such a bid, and notice has not been given that liberty for such bidding is reserved, the buyer may at his option avoid the sale or take the goods at the price of the last good faith bid prior to the completion of the sale. This subdivision shall not apply to any bid at a forced sale."

In November 1976, Equipment Auction sold the three items at auction to Lee Hereford. Linke came to San Jose from Nevada for the purpose of overseeing the auction. Schick and another bidder were the only ones who knew Linke represented Nevada National. Apparently, one bidder approached Linke requesting information about Nevada National's equipment; however, nothing in the record indicates that Linke informed the bidder of his intent to bid on Nevada National's equipment. None of the other bidders was told that a Nevada National employee was going to be bidding on that company's property. At trial Linke testified that had he been the successful bidder, he did not intend to pay the purchase price. Instead, he planned to re-auction the items at a later time in order to receive a higher price.

Linke bid on each of the three items owned by his employer. Hereford, nonetheless, was the successful bidder on all three pieces of equipment. His last bid on the trailer was $10,000 and his last bids were $6,100 and $8,600 for the two backhoes. His last bids before Linke started bidding were $6,000, $3,500, and $500, respectively. Pursuant to the terms of purchase, Hereford made a down payment of $7,000 to Equipment Auction and paid the balance within two days. Because of a dispute between Schick and Nevada National, however, Hereford's payment was not transferred to Nevada National.[3]

Nevada National sued Hereford and Schick[4] for breach of contract, conversion, money not received and claim and delivery. Hereford answered the complaint and filed a cross-complaint against Nevada National. In his amended cross-complaint Hereford alleged that Nevada National, Linke, Schick and Equipment Auction Company had conducted an illegal auction. Hereford sought reformation of the contract price pursuant to section 2328, subdivision (4), as well as punitive damages.

The Superior Court of Santa Clara County found that the auction was illegal, that Nevada National and Schick conspired to conduct an illegal auction, and that Nevada National withheld title with knowledge that it had no right to do so. Hereford was awarded $10,000 in punitive damages as well as $14,700 pursuant to the remedial provisions of section 2328, subdivision (4). The latter was the difference between Hereford's winning bid

---

[3]After making payment, Hereford took possession of the equipment, but Nevada National sent him the title document only for the trailer and refused to transfer title to the two backhoes. Linke informed Hereford that title to the backhoes would not be transferred until Nevada National received payment. Linke also requested release of the backhoes and informed Hereford that the equipment would be "picked up" if Linke could find it. Although Hereford has retained possession of the backhoes continuously, title had not been transferred prior to this litigation.

[4]A default judgment was entered against Schick from which no appeal was taken.

and Hereford's last bid before Linke's first sham bid. From this judgment, Nevada National appeals, urging that the San Jose auction was a "forced sale" thereby exempting the leasing company from the provisions of section 2328.

## II

### A. *"Forced Sale" under Section 2328*

If the seller, without notice to the buyers secretly bids on his own goods, section 2328, subdivision (4) permits the buyer to do the following: (1) avoid the sale, or (2) take the goods at the last good faith bid. The only sale exempted from this notice requirement[5] is a "forced sale." The parties are in agreement that the decision in the instant case turns on the definition of that term. Because the code fails to provide a definition of "forced sale" of goods, we give substance to that term in the context of the case at bench.

Nevada National, while agreeing that it had given actual consent to the sale, argues that the sale was nonetheless "forced." It argues that the auction sale is analogous to the sale of repossessed collateral.

Nevada National cites *Sly* v. *First Nat. Bank of Scotsboro* (Ala. 1980) 387 So.2d 198. In that case a bank posted notice of its intention to sell repossessed collateral, an automobile, at public auction. Sly bid on the car, but the auctioneer told him the bank might not accept the bid. Sly sued the bank for fraud and breach of contract. Nevada National relies on dicta in *Sly* that the Alabama statute, identical to section 2328, "impliedly gives a foreclosing creditor the right to bid without notice at sale of its collateral." (*Id.*, at p. 200.)

The argument that we deal with collateral, however, is unsupported by the facts. Indeed, Nevada National cannot explain how the owner of construction equipment, who is in the business of leasing that equipment, qualifies as an execution creditor. Prior to the auction Nevada National was always the owner and title holder of the two backhoes and the trailer. It did not repossess equipment owned by another.[6] When Nevada National chose to sell its equipment at an auction, it did so as the owner, not as an execution creditor.

---

[5]Because the question of what constitutes adequate notice under section 2328 is not presented in this case we do not address that issue. Presumably, an announcement of the seller's intent to bid on the goods, before the auctioneer calls for bids, would constitute sufficient notice.

[6]Although a lease may be a security interest under section 1201, subdivision (37), there was no evidence at trial that Nevada National's leases were security interests.

To analyze the term "forced sale," we must turn to the policy behind the forced sale exception. Section 2328, subdivision (4) generally provides that in the absence of explicit terms that inform the public that the seller reserves the right to bid at an auction, it is impermissible for the seller to bid, either directly or indirectly through an agent or employee. The forced sale provision, we have noted, is the only exception to this notice requirement. ■ The policy underlying the forced sale exception "is obviously to inspirit bidding at forced sales." (1 Cal. Commercial Law (Cont.Ed. Bar 1966) § 3.60, p. 62.)

This policy decision to encourage bidding is necessary because of the unfair, low prices typically received by sellers at forced sales. California courts have long expressed the need to distinguish prices at forced sales from fair market value because in forced sales "the full potential value of the property being sold is rarely realized." (*Strutt* v. *Ontario Sav. & Loan Assn.* (1972) 28 Cal.App.3d 866, 876 [105 Cal.Rptr. 395].)

■ Given the policy behind the forced sale exception its inapplicability to the case at bench is manifest. There were several commercially reasonable alternatives available to Nevada National. First, because the auction was one "with reserve," Nevada National could have refused the offers of the highest bidders. (§ 2328, subd. (3).)[7] Second, Nevada National could have sold the equipment before the auction or, third, it could have re-leased the equipment.[8]

Instead, Nevada National chose to raise the sales prices by secretly bidding on its own goods, even though it had no intention of buying them if it were the successful bidder. Such sales tactics have long been disapproved by the law of this state. Long before the adoption of section 2328, the use of "by-bidders" or "puffers" to make sham bids was prohibited as a fraud against the public. (See, e.g., *Haley* v. *Bloomquist* (1928) 204 Cal. 253, 257 [268 P. 365]; *Dealey* v. *East San Mateo Land Co.* (1913) 21 Cal.App. 39, 43 [130 P. 1066].)

---

[7]Section 2328, subdivision (3) expressly provides that auctions are "with reserve" unless specifically stated otherwise. That subdivision provides in full that, "Such a sale is with reserve unless the goods are in explicit terms put up without reserve. In an auction with reserve the auctioneer may withdraw the goods at any time until he announces completion of the sale. In an auction without reserve, after the auctioneer calls for bids on an article or lot, that article or lot cannot be withdrawn unless no bid is made within a reasonable time. In either case a bidder may retract his bid until the auctioneer's announcement of completion of the sale but a bidder's retraction does not revive any previous bid."

[8]Thus, we reject the argument that the auction was a "forced sale" simply because Nevada National was under a good faith duty to mitigate damages.

The sale of the equipment by Nevada National was not a forced sale within the meaning of section 2328, subdivision (4) since it was voluntary.[9] Accordingly, we conclude that Nevada National violated section 2328.

## B. *Punitive Damages*

■ Nevada National contends that there is no substantial evidence to support an award of punitive damages in that it lacked malice. ■ It is well established that an appellate court may reverse an award of punitive damages only when the entire record, when viewed most favorably to the judgment, indicates that the judgment was rendered as a result of passion and prejudice. (*Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, at p. 65, fn. 12 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878]; *Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910, at p. 927 [148 Cal.Rptr. 389, 582 P.2d 980].)

■ We are satisfied from such a review of the record that there is substantial evidence to support the trial court's finding that defendants conspired to fraudulently raise the prices by making secret fictitious bids and that the intent of such action was to defraud and injure Lee Hereford, the successful bidder. The record shows the following: Linke and Schick agreed to the secret bidding; Linke bid on the items owned by Nevada National and those bids were accepted by Schick; Linke bid solely to raise the sales prices; and Linke had no intention of paying the purchase price, if successful. The evidence supports the trial court's finding that defendants intentionally and maliciously raised the sales prices. Such behavior constitutes "malice in fact" and justifies the award of punitive damages. (*Rosener* v. *Sears, Roebuck & Co.* (1980) 110 Cal.App.3d 740, at p. 748 [168 Cal.Rptr. 237].)

As the punitive damage award predicated on the statutory prohibition is supported by substantial evidence, the judgment is affirmed.

Bird, C. J., Mosk, J., Kaus, J., Broussard, J., Grodin, J., and Merrill, J.,* concurred.

---

[9]Hereford argues that the forced sale exception is inapplicable, citing cases involving the California constitutional prohibition against forced sales of homesteads. (*Peterson* v. *Hornblower* (1867) 33 Cal. 266; *White* v. *Rosenthal* (1934) 140 Cal.App. 184 [35 P.2d 154].) Although we question the soundness of those decisions, we express no view on the forced sale definition in the context of real estate cases.

*Assigned by the Chairperson of the Judicial Council.