953 F.2d 1109
 WESTLANDS WATER DISTRICT, a California water district,
Plaintiff-Appellant,
v.
AMOCO CHEMICAL COMPANY, a corporation, formerly known as
Amoco Chemicals Co. and/or Amoco Chemical Corp.; Amoco
Reinforced Plastics Company; Amoco Reinforced Plastics
Company, a corporation; United Technologies Corporation, a
corporation, formerly known as United Aircraft Corporation,
a corporation, Defendants-Appellees.
 No. 90-15673
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 14, 1991.
Memorandum Sept. 30, 1991.
Order and Opinion Dec. 30, 1991.
Order Jan. 13, 1992.
 
 Timothy T. Coates, Greines, Martin, Stein & Richland, Beverly Hills, Cal., for plaintiff-appellant.
 Margaret Kemp-Williams, Chinello, Chinello, Shelton & Auchard, Fresno, Cal., for appellee Amoco Chemical Co.
 Michael D. Ott, Borton, Petrini & Conron, Fresno, Cal., for appellee Amoco Reinforced Plastics Company.
 John A. Buttrick, Bennett Evan Cooper Brown & Bain, P.A., Phoenix, Ariz., for appellee United Technologies Corp.
 Meredith A. Jury, Best, Best & Krieger, Riverside, Cal., for amicus curiae Association of California Water Agencies.
 Appeal from the United States District Court for the Eastern District of California.
 Before BRUNETTI and RYMER, Circuit Judges, and ZILLY*, District Judge.
 ORDER
 Request for publication is GRANTED.
 The memorandum disposition filed September 30, 1991, is hereby redesignated as an authored Opinion by Judge Brunetti.
 OPINION
 BRUNETTI, Circuit Judge:
 
 
 1
 Plaintiff-Appellant Westlands Water District ("Westlands"), a California water district, appeals from an order of the district court dismissing Westlands' claim for punitive damages under Cal.Civil Code § 3294. We reverse.
 
 I.
 
 2
 On October 13, 1989, Westlands filed a complaint in federal district court against Defendants-Appellees Amoco Chemical Company, Amoco Reinforced Plastics Company, and United Technologies Corporation (collectively "defendants").[1] The complaint alleged that, due to misrepresentations made by defendants and/or their predecessors in interest, a defective pipe was used in Westlands' pipeline distribution system, causing the system to malfunction and cause physical damage to Westlands' distribution system and other real and personal property. The complaint asserted causes of action for strict products liability, negligence, breach of express warranty, breach of implied warranty, and fraud, misrepresentation and deceit. The complaint sought $25 million in general damages, and punitive damages.
 
 
 3
 On November 27, 1989, defendant Amoco Reinforced Plastics filed a motion to strike the punitive damages claim, in which the other defendants joined. An oral hearing on the motion was held January 29, 1990. On March 6, the district court entered an order striking the punitive damages claim.
 
 
 4
 On April 17, the district court issued an order certifying the punitive damages issue for interlocutory appeal. We issued an order granting permission to appeal under § 1292(b) on May 17, 1990, and Westlands filed a timely notice of appeal on May 25, 1990.II.
 
 
 5
 We review the district court's interpretation of a state law de novo. See State Farm Fire & Casualty Co. v. Abraio, 874 F.2d 619, 621 (9th Cir.1989); In re McLinn, 739 F.2d 1395, 1403 (9th Cir.1984) (en banc).
 
 
 6
 The question of law before us is subject to the general rule that "[i]n a diversity case, 'where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it.' ... The decisions of the state's intermediate appellate courts are data that a federal court must consider in undertaking this analysis." Air-Sea Forwarders, Inc. v. Air Asia Co., Ltd., 880 F.2d 176, 186 (9th Cir.1989) (citations omitted), cert. denied, 493 U.S. 1058, 110 S.Ct. 868, 107 L.Ed.2d 952 (1990); see also State Farm Fire & Casualty Co. v. Abraio, 874 F.2d 619, 621 (9th Cir.1989) (state appellate decisions provide "guidance" to this court where supreme court has not ruled).
 
 
 7
 When an intermediate appellate court has ruled on an issue, and the state supreme court has not yet ruled on it, we will follow the intermediate court's decision "unless there is convincing evidence that the state supreme court would decide differently." Abraio, 874 F.2d at 621.
 
 III.
 
 8
 In City of Los Angeles v. Shpegel-Dimsey, Inc., 198 Cal.App.3d 1009, 244 Cal.Rptr. 507 (1988), the second district of the California Court of Appeal held that a municipality may not recover punitive damages. The city sued the defendant company, which manufactured plastic materials, for the costs of extinguishing a fire at the plastics plant, as well as for damage to the city's utility poles and other property. The city also sought punitive damages due to defendant's repeated violations of the city fire code over a ten-year period prior to the fire.
 
 
 9
 The court's opinion noted two bases for its holding that punitive damages were not recoverable: (1) because the purpose of punitive damages is to punish a defendant, and because a municipality may punish by the use of its police powers, punitive damages are not a necessary tool for municipal plaintiffs; and (2) because punitive damages may not be recovered from a municipal entity, to allow municipal entities to recover punitive damages would "raise the spectre of a denial of equal protection of the laws." Westlands argues that the reasoning on both of these grounds is faulty, and that the opinion goes against the plain language of California Civil Code § 3294(a).
 
 A. Statutory Language
 
 10
 Westlands argues that the holding of City of Los Angeles is inconsistent with the plain language of Civil Code § 3294. The statute reads in relevant part:
 
 
 11
 In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.
 
 
 12
 Another California statute defines a "plaintiff" as including "a person who files the complaint or cross-complaint." Cal.Code of Civ.P. § 481.180. A "person" is "a natural person, a corporation, a partnership or other unincorporated association, and a public entity." Cal.Code of Civ.P. § 481.170 (emphasis added). Therefore, a water district such as Westlands may, under the language of § 3294, recover punitive damages in appropriate cases.
 
 
 13
 Courts may not rewrite unambiguous statutory language. People v. Skinner, 39 Cal.3d 765, 775, 217 Cal.Rptr. 685, 691, 704 P.2d 752, 758 (1985). Defendants argue that because § 3294 does not specifically address and include public entities, the conclusion of City of Los Angeles is not contrary to the statutory language. Westlands argues that the use of the term "plaintiff" in § 3294 without any restriction indicates that the recovery of punitive damages in appropriate cases is not limited to private plaintiffs.
 
 
 14
 In construing statutory language and determining legislative intent, the California Supreme Court looks first to the words of the statute, "giving them their usual and ordinary meaning." Committee of Seven Thousand v. Superior Court of Orange County, 45 Cal.3d 491, 501, 247 Cal.Rptr. 362, 367, 754 P.2d 708, 713 (1988). The plain language of § 3294 would allow all plaintiffs, both public and private, to recover punitive damages. We find nothing within the statute itself that we believe would lead the California Supreme Court to a contrary conclusion.
 
 B. Punishment
 
 15
 Under California law,
 
 
 16
 punitive damages are recoverable "for the sake of example and by way of punishing the defendant." A private party has no means of punishing a tortfeasor other than an award of exemplary damages. In contrast, a municipality has at its command the full force of its police power. By ordinance, it may impose fines or other penal remedies.
 
 
 17
 City of Los Angeles, 198 Cal.App.3d at 1023, 244 Cal.Rptr. at 514 (quoting Cal.Civ.Code § 3294(a)). However, unlike the city plaintiff in City of Los Angeles, many public entities, including water districts, lack police power to impose criminal sanctions on individuals and corporations. In fact, the very language of that case makes it clear that a significant difference exists between municipalities and other public entities; although the court of appeal held that public entities could not recover punitive damages, it based that holding on the fact that municipalities such as the plaintiff in the case possess the police powers that make the recovery of punitive damages unnecessary. Id. at 1025-26, 244 Cal.Rptr. at 515 ("Since a municipality may exercise its police power to punish a wrongdoer by way of example, its failure to do so should not be excused by providing the remedy of punitive damages.").[2] In the case before us, Westlands is in the same position as any other private party; if at trial defendants are determined to have been guilty of oppression, fraud or malice, they cannot be punished for their actions if Westlands cannot recover punitive damages.
 
 
 18
 Although water districts do have authority to make rules and regulations regarding the distribution of water, and violation of such rules is punishable as a misdemeanor, Cal.Water Code §§ 35423, 35424, this authority is not comparable to the authority of a municipality to impose criminal sanctions on behavior which does not comport with penal regulations. The dissent argues that, if it chose to do so, the California Legislature could supplement the powers of water districts. This could be accomplished through either specific rules relating to the suppliers of labor or materials to water districts or a more general grant of authority to water districts which would allow them to police and punish all aspects of water distribution. The California Legislature, however, has not chosen to increase the power or authority of California's water districts. We disagree with the dissent's belief that it is proper to treat as equals municipalities that possess broad-ranging police powers and water districts to whom the state legislature could at some future time grant the authority to enact laws regarding the provision of water. This is a matter for the legislative process, and the California Legislature has clearly made a distinction between the power it has granted to municipalities like the City of Los Angeles and water districts like Westlands. This distinction is one that we must recognize and accept in interpreting § 3294 and City of Los Angeles. We do not believe that the California Supreme Court would conclude that the very limited rule-making authority granted to public entities such as water districts removes these entities from the purview of § 3294.
 
 C. Equal Protection
 
 19
 California Government Code § 818 bars any award of punitive damages against a public entity. This section was upheld as constitutional in McAllister v. South Coast Air Quality Mgmt. Dist., 183 Cal.App.3d 653, 228 Cal.Rptr. 351 (1986). There, the appellate court held:
 
 
 20
 The equal protection clause "does not prohibit legislative classification and imposition of statutory restraints on one class which are not imposed on another. The classification is constitutionally infirm only if it bears no rational relationship to the achievement of a legitimate state objective.... A statutory discrimination will not be set aside as a denial of equal protection of the laws if any state of facts reasonably may be conceived to justify it."
 
 
 21
 Id. at 659, 228 Cal.Rptr. at 355 (citations omitted) (emphasis deleted). The court held that the distinction between public and private tortfeasors had a rational relationship to a legitimate government goal; to allow punitive damages against a public entity would punish the general public, which is the group ultimately intended to be benefited by the punishment. Id. at 659-60, 228 Cal.Rptr. at 355.
 
 
 22
 Because a rational basis exists for the distinction between allowing public entities to recover punitive damages while denying recovery of punitive damages from public entities, we believe that the California Supreme Court would find no equal protection problem. Preventing punishment of the general public through the imposition of punitive damages against a public entity, and allowing a public entity which lacks traditional police powers to punish wrongdoings of defendants which injure the general public are both legitimate state objectives. The statutory scheme which restricts the award of punitive damages against all public entities, but allows those entities to recover punitive damages bears a rational relationship to the state objectives, and therefore would withstand an equal protection claim.
 
 IV.
 
 23
 We are cognizant of the fact that, as the dissent notes, punitive damages are never recoverable as a matter of right under California law, and that they should be awarded only in the clearest of cases. Nevertheless, we do not believe that the California Supreme Court is as resistant to the principle of punitive damages as the dissent would intimate.
 
 
 24
 It is true that the concept of punitive damages has been criticized; but unless at this late date we were to hold [§ 3294] unconstitutional--a proposition that has been frequently rejected ... we cannot usurp the Legislature's determination that such damages should be recovered in cases in which the statutory prerequisites are fulfilled. [Egan v. Mutual of Omaha Insur. Co., 24 Cal.3d 809, 819-20, 620 P.2d 141, 146, 169 Cal.Rptr. 691, 696 (1979), cert. denied and appeal dismissed, 445 U.S. 912, 100 S.Ct. 1271, 63 L.Ed.2d 597 (1980) (footnote and citations omitted) ].
 
 
 25
 In California, punitive damages have been awarded and upheld in cases of products liability, Grimshaw v. Ford Motor Co., 119 Cal.App.3d 757, 174 Cal.Rptr. 348 (1981), and fraud, Nevada Nat'l Leasing Co. v. Hereford, 36 Cal.3d 146, 203 Cal.Rptr. 118, 680 P.2d 1077 (1984), both of which causes of action were pleaded by Westlands.
 
 
 26
 Our decision today neither awards punitive damages in favor of Westlands nor holds in any way that Westlands is entitled to recover such damages. We hold only that the rationale of City of Los Angeles should not be applied to water districts, and reverse the order of the district court dismissing Westlands' claim for punitive damages under Cal.Civ.Code § 3294.
 
 
 27
 REVERSED.
 
 ZILLY, District Judge, dissenting:
 
 28
 This is a diversity case. The majority has refused to follow California law as announced in City of Los Angeles v. Shpegel-Dimsey, Inc., 198 Cal.App.3d 1009, 244 Cal.Rptr. 507 (1988). That decision must be followed "unless there is convincing evidence that the state supreme court would decide differently." State Farm Fire & Casualty Co. v. Abraio, 874 F.2d 619, 621 (9th Cir.1989). The majority's attempt to distinguish City of Los Angeles is unpersuasive and they fail to provide convincing evidence that the California Supreme Court would decide the issue differently. I must therefore respectfully dissent.
 
 
 29
 Westlands is a California water district formed under section 37800, et seq. of the California Water Code. Westlands seeks various relief, including punitive damages, against the defendants. The defendants are alleged to have sold the water district defective pipe, knowing of the defects and failing to disclose the defects to the water district. The district court dismissed the punitive damage claim and this appeal followed.
 
 
 30
 Punitive damages are not recoverable as a matter of right under California law. Henderson v. Security National Bank, 72 Cal.App.3d 764, 771, 140 Cal.Rptr. 388 (1977). Rather, punitive damages are not favored in California and are allowed with the greatest of caution. Id. at 771, 140 Cal.Rptr. at 392. Punitive damages could not be recovered against Westlands, a public entity, as a matter of public policy in California. Cal.Government Code § 818; McAllister v. South Coast Air Quality etc. Dist., 183 Cal.App.3d 653, 228 Cal.Rptr. 351 (1986). The issue presented in this case is whether a different result is appropriate when the same public entity seek to recover the punitive damages. This is an important issue of public policy which has been decided by a unanimous three-judge panel of the California Court of Appeals expressly holding that a "public entity" cannot "recover punitive damages for public injury from private tortfeasors." City of Los Angeles, 198 Cal.App.3d at 1026, 244 Cal.Rptr. at 515. City of Los Angeles is the law of the state of California. There is no decision to the contrary. It should be followed by a federal court sitting in diversity unless there is convincing evidence that the state supreme court would decide the issue differently. This is especially true where the California Supreme Court has refused to review the lower appellate court's decision. Stoner v. New York Life Ins. Co., 311 U.S. 464, 61 S.Ct. 336, 85 L.Ed. 284 (1940); State Farm Fire & Casualty Co., 874 F.2d at 621.
 
 
 31
 It is the duty of a federal court to "ascertain from all the available data what the state law is and apply it rather than to prescribe a different rule, however superior it may appear." West v. American Tel. & Tel. Co., 311 U.S. 223, 237, 61 S.Ct. 179, 183-84, 85 L.Ed. 139 (1940). Westlands argues that the court in City of Los Angeles "literally re-wrote section 3294, an action that would not be countenanced by the California Supreme Court." Brief of Appellant at 3. Section 3294 of the California Civil Code permits any plaintiff, including a public entity, to assert a claim for punitive damages under certain limited circumstances. With that section of the Civil Code directly at issue, the City of Los Angeles court refused to allow the City of Los Angeles to recover punitive damages as a matter of public policy. There is no reason to believe the California Supreme Court would decide the issue differently.
 
 
 32
 The City of Los Angeles decision rests on two bases with which the majority disagrees. It is certainly not the function of this Court to reverse an opinion of the California Court of Appeals merely because it does not agree with that court's reasoning. In City of Los Angeles, the City of Los Angeles sued Pioneer Plastics for various violations of the city's fire code seeking the recovery of fire abatement costs, fire suppression costs and punitive damages. The court of appeals expressly held that "[t]here are sound bases for refusing to permit the recovery of punitive damages in the absence of express statutory authorization." City of Los Angeles, 198 Cal.App.3d at 1023, 244 Cal.Rptr. at 513-514. That court reasoned that in contrast to a private party who has no power to punish a tortfeasor other than by punitive damages, a municipality has the means to punish a tortfeasor through the use of its police power. Although Westlands lacks the same police power as a municipality, water districts in California do have authority to make rules and regulations regarding the sale and distribution of water and the violation of such rules is punishable as a misdemeanor. Cal.Water Code §§ 35423, 35424. These powers would only apply to persons who purchase water from a water district and would not provide a remedy against the defendants in the instant case. However, the California legislature could supplement the powers of the water districts by providing rules relating to suppliers of labor or materials to California water districts. The majority concludes that the limited powers granted to the water districts are not "sufficient" to remove public water districts from the application of Civil Code § 3294. Federal courts, sitting in diversity, should be very reluctant to state what is "sufficient" under the circumstances. California water districts have rather significant police powers which could be used in connection with the sale and distribution of water. These powers precluded the recovery of punitive damages by the City of Los Angeles. The result should be the same where the legislature has the power to enact specific laws dealing with the suppliers of labor and materials to water districts.
 
 
 33
 The City of Los Angeles court also held that "permitting a governmental entity to seek the recovery of punitive damages would raise serious questions of equal protection under the law." City of Los Angeles, 198 Cal.App.3d at 1023, 244 Cal.Rptr. at 514. The majority properly notes that a rational basis exists for a distinction between allowing public entities to recover punitive damages while denying recovery of the same damages from public entities. The City of Los Angeles court recognized this distinction and carefully considered the McAllister case before concluding that public considerations deemed reasonable for upholding Government Code section 818 against an equal protection attack did not support permitting a public entity to recover punitive damages. The Court reasoned that allowing the public entity to recover punitive damages would "clearly raise the spectre of a denial of equal protection of the laws." Id. at 1026, 244 Cal.Rptr. at 515. This was a carefully considered policy decision not to allow punitive damages in favor of the public entity when others cannot recover punitive damages against the same public entity. A contrary holding would result in an undesirable "asymmetry in the type of damages" a public entity could recover when Government Code section 818 bars any award of punitive damages against a public entity. Id. at 1023, 244 Cal.Rptr. at 514.
 
 
 34
 Read in its entirety, the City of Los Angeles case resolved an important issue of public policy in California. Since that time California state courts have been bound by this rule at law. Auto Equity Sales, Inc. v. Superior Court of Santa Clara County, 57 Cal.2d 450, 455, 20 Cal.Rptr. 321, 369 P.2d 937 (1962). The district judge below properly applied this rule in granting the defendant's motion to strike plaintiff's punitive damage claim. The function of the federal judge, sitting in diversity, "is to ascertain what the state law is, not what it ought to be." Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 489, 61 S.Ct. 1020, 1022, 85 L.Ed. 1477 (1941).
 
 
 35
 Even if the majority could distinguish the City of Los Angeles case, their work would only be half done. It would then be necessary to analyze California court decisions to determine what the supreme court of that state would decide on the issue presented. Such an analysis would require recognition of the fact that punitive damages are greatly disfavored and that the courts of California will only allow them when clearly permitted by statute. Punitive damages are only allowed in the clearest of cases after a showing of actual malice, which will not be implied by law. Toole v. Richardson-Merrell, Inc., 251 Cal.App.2d 689, 713, 60 Cal.Rptr. 398 (1967). Essential to an award of punitive damages in California is a finding that the plaintiff was subject to "cruel and unjust hardship" by the defendant. Trammel v. Western Union Tel. Co., 57 Cal.App.3d 538, 557, 129 Cal.Rptr. 361 (1976). Finally, the statute authorizing these damages in California requires "clear and convincing evidence" of "oppression, fraud or malice." Cal.Civil Code § 3294. As noted in the City of Los Angeles decision, "there is no California authority whatsoever expressly permitting a public entity to seek the recovery of punitive damages" and, moreover, the court noted that with one exception, "no other United States jurisdiction expressly permits such recovery."[1] City of Los Angeles, 198 Cal.App.3d at 1023, 244 Cal.Rptr. at 513. This strongly suggests that the California courts would be most reluctant to do what no other state permits with one exception.[2]
 
 
 36
 The purpose of punitive damages is to punish the offender and to deter others committing similar wrongs. McAllister, 183 Cal.App.3d at 660, 228 Cal.Rptr. at 355. Punitive damages are clearly disfavored in California and will be limited by the California courts when possible. There are strong public policy arguments in favor of a rule that would prohibit a public entity from recovering punitive damages when the same entity cannot be sued for them. Under all the circumstances, it cannot be said that there is convincing evidence presented that the California Supreme Court would allow a California water district to recover punitive damages from private tortfeasors. The trial court's decision should therefore be affirmed.
 
 
 
 *
 Honorable Thomas S. Zilly, United States District Judge for the Western District of Washington, sitting by designation
 
 
 [1]
 After the appeal was calendared in this court, defendant United Technologies reached a settlement with plaintiff, and was dismissed with prejudice from the case. Therefore, United Technologies did not take part in the argument of the case
 
 
 [2]
 The dissenting opinion notes that the City of Los Angeles decision states that "there is no California authority whatsoever expressly permitting a public entity to seek the recovery of punitive damages," and, moreover, that, with only one exception, "no other United States jurisdiction expressly permits ... recovery [of punitive damages by public entities]." City of Los Angeles, 198 Cal.App.3d at 1023, 244 Cal.Rptr. at 513. Clearly, the City of Los Angeles court, in denying a municipality's right to recover punitive damages, was doing so because the municipality had the ability under its police power to punish the defendant, while a private party must resort to punitive damages as a means of punishing the defendant. Id. 244 Cal.Rptr. at 513-14. We disagree with the dissent's assertion that this policy discussion suggests that the California Supreme Court would be most reluctant to do "what no other state permits with one exception." The California statute must be read for its plain meaning and not by what other states may or may not do with their statutory schemes
 
 
 [1]
 Westland's reliance on State of California v. Hansen, 189 Cal.App.2d 604, 11 Cal.Rptr. 335 (1961), is misplaced. The $100 award in Hansen was for "nominal, actual or punitive" damages and was decided prior to the enactment of California Government Code section 818
 
 
 [2]
 The Kansas decision, cited by the City of Los Angeles court, United School District v. Celotex Corp., 6 Kan.App.2d 346, 629 P.2d 196 (1981), involving a school district, was not followed in a later case in Kansas involving an administrative agency of that state. State ex rel. Secretary of Social & Rehabilitation Services v. Fomby, 11 Kan.App.2d 138, 715 P.2d 1045 (1986)