## PASCAL SUROCCO et al. *v.* JOHN W. GEARY.

```
  3   69
126  674
```

A person who tears down or destroys the house of another in good faith, and under apparent necessity, during the time of a conflagration, for the purpose of saving the buildings adjacent, and stopping its progress, is not personally liable in an action by the owner of the property destroyed.

A house on fire, or those in its immediate vicinity, which serve to communicate the flames, is a nuisance which it is lawful to abate, and the private rights of the individual yield to considerations of general convenience and the interests of society.

The constitutional provision, that requires payment for private property taken for public use, does not apply in such case. This right belongs to the State, in virtue of her right of eminent domain.

The property thus taken was not a taking for public purposes, but a destruction for individual benefit, or for the city, and not for the State.

The necessity for such act of destruction must be clearly shown. But in all such cases the individual must be regulated by his own judgment; and if done without actual or apparent necessity, he is liable in trespass.

The plaintiff cannot recover for the value of the goods in the house which he might have saved—these are equally liable to the necessities of the occasion with the house in which they are placed.

APPEAL from the Superior Court of San Francisco.

This was an action brought in the Superior Court of the City of San Francisco, by the plaintiffs, against the defendant, for the recovery of damages for the blowing up with gunpowder, and destroying their house and store, with the goods therein, on the 24th December, 1849. Damages laid at $65,000.

The defendant answered, that the said building was, at the time of the entry upon the same and of the destruction thereof, certain to be consumed by a public conflagration then raging in the city of San Francisco, and to communicate the said conflagration to other adjacent buildings in the said city. That defendant was at the time First Alcalde of the said city, and did, by the advice and command of divers members of the then Ayuntamiento, enter into and destroy the said building, as for the cause stated he lawfully might do, the same being then and there a public nuisance, and denies the damage, and asks to be dismissed, with costs, &c.

There was a good deal of testimony given as to the value of the building and goods contained in it, and as to the necessity for its destruction at the time. The proof was, however, that the fire in a very few minutes reached the site of the building, and extended beyond it, and that its destruction would have been certain if it had not been blown up.

On the 25th October, 1850, the court in banc, sitting as a jury, on a reargument of the case, found for the plaintiffs in the sum of $7500, and ordered judgment accordingly.

From which defendant appealed.

*Dwinelle*, and *Holt*, for appellant.

The question of law is, whether a person or public officer has a right to pull down a building, acting in good faith for the purpose of preventing the spreading of a public conflagration, without being personally liable therefor in damages.

The law of Mexico prevailed at the time of the conflagration, when the damage is alleged to have been done, in December, 1849. 1 Peters, 511, 542. By that law the individual who in *good faith* destroyed a building, to prevent the spread of a public conflagration, was expressly held not liable in damages. 7 Partides, Title 15, Law 10.

Such destruction is not done solely on one's own account, but for that of the whole city ; for it might happen that if not thus arrested, the fire might spread over the whole town, or a great part of it ; and acting with a good intention, he is not answerable in damages.   Ib. pp. 39, 440.   If a private individual could do this, *a fortiori*, could the chief magistrate of the city do it.

The same rule prevails at common law, and is a principle of public law everywhere.

And property so destroyed is not " taken for public use," nor does the principle of compensation apply.   Constitution California, Art. 1, Sec. 8.

The act is not that of the sovereign exercising the right of eminent domain, but an act of private necessity, done for private advantage, like that which authorizes the appropriation of a plank by one, which will not sustain two in the water.   2 Kent. Com. 338 ; 1 Dall. 369 ; 1 Zabriskie, 257, 258, 260, 264, 265 ; S. C. in error ; Ib. 728 ; 17 Ward, 290, 291 ; S. C., 18 Wend. 129 ; 25 Ib. 174 ; 2 Denio, 473, 483, 484, 485 ; 1 Cal. Rep. 356 ; 21 Wend. 367.   Although the act of destruction is for the public benefit, in one sense, it is so only as a matter of policy, and those whose property is saved by it, reap the benefit, and ought to contribute, if any one is to be held accountable, on the principle of general average.   Moyer et al. *v.* Lord, 18 Wend. 130 ; 25 Wend. 176–7.

The mode of compensation in certain cases, and who is to make it, is provided for by the application of general principles. 14 Wend. 51 ; 10 Wend. 659 ; 6 Wend. 634 ; 20 Johns. 735 ; 1 Bald. 228 ; 8 Greenl. 365.   The party benefited may be sued for compensation : 1 N. H. 339 ; 7 Mass. 202 ; and if several, for contribution.   18 Wend. 138 ; 25 Wend. 176–7.

As to the necessity for the act complained of, that must be taken to be necessary, which is judged to be so by the judgment of discreet men, who have knowledge of all the circumstances. We are not bound to await the event in judging of the necessity of a protective measure, as in throwing goods overboard to lighten the vessel ; the gale may cease, but the master is not liable for the loss.   " Doing the act with good intentions," taken from the Spanish law, is a phrase illustrative of the principle of

justification.   In this case the fire actually reached the site of the building after its destruction.

We ask that the judgment be reversed, and that an absolute judgment be entered for the appellant.  The case is governed by the Practice Act of 1850, under which this court have authority to render such judgment as substantial justice may require, sects. 162, 271, 275, 279 ; and this appeal was taken before that act was repealed, Min. Sup. Ct., vol. 2, p. 5, and is saved by the repealing Act of 1851, sect. 648.

No brief on file for respondent.*

MURRAY, Chief Justice, delivered the opinion of the Court. HEYDENFELDT, Justice, concurred:

This was an action, commenced in the court below, to recover damages for blowing up and destroying the plaintiffs' house and property, during the fire of the 24th of December, 1849.

Geary, at that time Alcalde of San Francisco, justified, on the ground that he had authority, by virtue of his office, to destroy said building, and also that it had been blown up by him to stop the progress of the conflagration then raging.

It was in proof, that the fire passed over and burned beyond the building of the plaintiffs', and that at the time said building was destroyed, they were engaged in removing their property, and could, had they not been prevented, have succeeded in removing more, if not all of their goods.

The cause was tried by the court sitting as a jury, and a verdict rendered for the plaintiffs, from which the defendant prosecutes this appeal under the Practice Act of 1850.

The only question for our consideration is, whether the person who tears down or destroys the house of another, in good faith, and under apparent necessity, during the time of a conflagration, for the purpose of saving the buildings adjacent, and stopping its progress, can be held personally liable in an action by the owner of the property destroyed.

* The case of Heatley et. al. v. Geary, decided at this term, was a claim of like character with the preceding, and supported by like evidence, and held by the court to involve no new principle; it is, therefore, not deemed necessary to report it.

This point has been so well settled in the courts of New York and New Jersey, that a reference to those authorities is all that is necessary to determine the present case.

The right to destroy property, to prevent the spread of a conflagration, has been traced to the highest law of necessity, and the natural rights of man, independent of society or civil government. "It is referred by moralists and jurists to the same great principle which justifies the exclusive appropriation of a plank in a shipwreck, though the life of another be sacrificed; with the throwing overboard goods in a tempest, for the safety of a vessel; with the trespassing upon the lands of another, to escape death by an enemy. It rests upon the maxim, *Necessitas inducit privilegium quod jura privata.*"

The common law adopts the principles of the natural law, and places the justification of an act otherwise tortious precisely on the same ground of necessity. (See 1st Zabriskie, American Print Works v. Lawrence, and the cases there cited.)

This principle has been familiarly recognized by the books from the time of the saltpetre case, and the instances of tearing down houses to prevent a conflagration, or to raise bulwarks for the defence of a city, are made use of as illustrations, rather than as abstract cases, in which its exercise is permitted. At such times, the individual rights of property give way to the higher laws of impending necessity.

A house on fire, or those in its immediate vicinity, which serve to communicate the flames, becomes a nuisance, which it is lawful to abate, and the private rights of the individual yield to the considerations of general convenience, and the interests of society. Were it otherwise, one stubborn person might involve a whole city in ruin, by refusing to allow the destruction of a building which would cut off the flames and check the progress of the fire, and that, too, when it was perfectly evident that his building must be consumed.

The respondent has invoked the aid of the constitutional provision which prohibits the taking of private property for public use, without just compensation being made therefor. This is not "a taking of private property for public use," within the meaning of the Constitution.

The right of taking individual property for public purposes

belongs to the State, by virtue of her right of eminent domain, and is said to be justified on the ground of state necessity; but this is not a taking or a destruction for a public purpose, but a destruction for the benefit of the individual or the city, but not properly of the State.

The counsel for the respondent has asked, who is to judge of the necessity of the destruction of property?

This must, in some instances, be a difficult matter to determine. The necessity of blowing up a house may not exist, or be as apparent to the owner, whose judgment is clouded by interest, and the hope of saving his property, as to others. In all such cases the conduct of the individual must be regulated by his own judgment as to the exigencies of the case. If a building should be torn down without apparent or actual necessity, the parties concerned would undoubtedly be liable in an action of trespass. But in every case the necessity must be clearly shown. It is true, many cases of hardship may grow out of this rule, and property may often in such cases be destroyed, without necessity, by irresponsible persons, but this difficulty would not be obviated by making the parties responsible in every case, whether the necessity existed or not.

The legislature of the State possess the power to regulate this subject by providing the manner in which buildings may be destroyed, and the mode in which compensation shall be made; and it is to be hoped that something will be done to obviate the difficulty, and prevent the happening of such events as those supposed by the respondent's counsel.

In the absence of any legislation on the subject, we are compelled to fall back upon the rules of the common law.

The evidence in this case clearly establishes the fact, that the blowing up of the house was necessary, as it would have been consumed had it been left standing. The plaintiffs cannot recover for the value of the goods which they might have saved; they were as much subject to the necessities of the occasion as the house in which they were situate; and if in such cases a party was held liable, it would too frequently happen, that the delay caused by the removal of the goods would render the destruction of the house useless.

The court below clearly erred as to the law applicable to the facts of this case. The testimony will not warrant a verdict against the defendant.

Judgment reversed.