## THE BRINTON.

### FISHER et al. v. PENNSYLVANIA R. CO.

(Circuit Court of Appeals, Second Circuit. January 9, 1895.)

No. 39.

SHIPPING—LIABILITY FOR TORT—DRAGGING SUNKEN VESSEL.

After the sinking of a sloop by collision with a tug in a narrow channel, the tug, having rescued and landed the crew of the sloop, and returned to the place of collision, seeing the broken mast, boom, and sails of the sloop floating, made fast to them, and towed them several hundred feet, not intending to move the hull; but it also was dragged along the bottom by the wire shrouds, and thereby badly broken. *Held*, that the tug was liable for the damage thus done, her removal of the sloop not being justifiable as the abatement of a public nuisance, or for the protection of the sloop herself, or for the safety of navigation generally.

Appeal from the District Court of the United States for the Southern District of New York.

This was a libel by Peter Fisher and A. W. Stinemire, owners of the sloop Marietta, against the tug Brinton (the Pennsylvania Railroad Company, claimant), for damages to the sloop. The district court dismissed the libel. Libelants appeal.

For decision on libel against the tug for damages for collision with the sloop, see 59 Fed. 714.

Wing, Shoudy & Putnam and Charles C. Burlingame, for appellants.

Robinson, Biddle & Ward and Henry Galbraith Ward, for appellee.

Before WALLACE and LACOMBE, Circuit Judges.

WALLACE, Circuit Judge. The libel in this cause was filed to recover damages for injuries occasioned to the sloop Marietta, the property of the libelants, in consequence of being dragged upon the bottom of the Arthur Kill by the tug Brinton, under the following circumstances: About half-past 11 on the night of September 5, 1893, the sloop, while bound up the Arthur Kill, was run into and sunk by the Brinton. The channel there was about 600 feet wide, and the sloop sunk on the New Jersey side of the channel, in about 18 feet of water. The Brinton rescued those on board the sloop, and landed them at Erastina, Staten Island. She then returned to meet a tow of loaded boats belonging to her owner, the Pennsylvania Railroad Company. When the Brinton reached the place of collision, those in charge of her saw the broken mast of the sloop, with the boom and sails, floating in the water. Thereupon, they fastened the Brinton's line to the broken mast, and towed the sloop a distance of several hundred feet, dragging the hull on the bottom of the channel. The Brinton's master did not intend to move the sloop,

but intended only to remove the mast and sails, doubtless with a view of saving them for the owners of the sloop, as well as to get them out of the track of vessels; but the wire shrouds attached to the broken mast and to the hull were not disconnected, and the hull followed the mast. The hull was badly broken by the stones with which it came in contact. The answer of the owner of the Brinton alleges that the moving of the sloop was done with the greatest care, and was necessary both for her own safety and for the safety of lives and property on other vessels which constantly passed through the Kills; and that the sloop where she lay was a dangerous obstruction to navigation, and was liable to injure the tows of the owner of the Brinton, and to be injured by them.

The district court dismissed the libel, apparently upon the ground that the Brinton was justified in removing the sloop, as a dangerous obstruction to navigation, and did so in a proper manner. Upon this appeal it is urged for the appellee that the removal of the sloop was justifiable, as the abatement of a public nuisance.

It is to be observed that those in charge of the Brinton did not intend to move the hull of the sloop, and their acts were not done with the purpose of abating a nuisance. It is also to be remarked that the libelants, whose vessel had been accidentally sunk, did not have any opportunity to attempt to remove her themselves, and could not, in so short a time, procure any appliances for doing so. Passing these facts, and without adverting to the question whether, under such circumstances, the libelants could be deemed guilty of maintaining a nuisance, it suffices to dispose of the defense that neither the Brinton, her tow, nor any other property of the corporation owning the Brinton, was endangered by the wreck. There was ample room on either side of the channel for vessels or tows to pass in safety; and, however dangerous the wreck might prove to those who were not aware of the obstruction, the appellee was not one of them, and its agents, aware of the situation, could have taken all necessary precautions to avoid peril to any of the vessels of the appellee. Notice to the master of the Brinton was notice to the corporation, to the extent that he could have imparted the necessary information to its other vessels and tows. It is not pretended that any danger was to be apprehended by the Brinton herself, nor was there any to the tow which she was about to meet, because the master of the Brinton could have informed those in charge of the tow of the location of the wreck, even if he did not accompany the tow, as it was apparently his purpose to do. Moreover, it is manifest from the testimony of the Brinton's master that the powerful tugs and heavy barges of the appellee, if they had come in contact with the hull of the sloop, would have crushed it without material injury to themselves; and it is doubtless for this reason that the Brinton's justification is placed, in part, upon the necessity of removing the sloop in order to protect the sloop from injury.

The opinion of the earlier authorities that any person may abate a public nuisance is not approved by the weight of modern authority. The better doctrine is stated by Campbell, C. J., in Dimes v. Petley, 15 Q. B. 276, as follows:

"It is fully settled by the recent cases that, if there be a nuisance in a public highway, a private individual cannot, of his own authority, abate it, unless it does him a special injury, and then only to the extent necessary to enable him to exercise his right of passing over the highway. And we clearly think he cannot justify doing any damages to the property of individuals who have placed the nuisance there, if, avoiding it, he could have passed on with reasonable convenience."

The authorities are collected in 16 Am. & Eng. Enc. Law, p. 991, and their result, we think, is correctly stated in the text (page 994), in substance, as expressed by Chief Justice Campbell. See, also, Railroad v. Ward, 2 Black, 485, and Irwin v. Dixion, 9 How. 10.

So far as the defense rests upon the necessity of the Brinton's acts in order to save the sloop herself from harm, it cannot be maintained, in the absence of clear proof, that what was done was in fact necessary, and was beneficial to the libelants. It does not suffice that it may possibly have been so. The libelants were entitled to an opportunity to judge for themselves whether their own property was in danger, and what means should be taken to preserve it. He who, by voluntarily intermeddling with the property of another, injures it, unless he can escape liability by a legal justification, must assume the burden of establishing that his act could not have entailed loss upon the owner. He cannot substitute his judgment, however honest and well meant, for that of the owner, and exonerate himself from the direct and immediate consequences of his act, by proving the existence of conjectural perils which might have visited an equal or greater loss upon the owner. This little sloop might have rested where she sunk for many days before another vessel should have passed over the precise spot. The next day, before the libelants knew she had been moved, they had contracted with a wrecking company to raise her. In the meantime they could have placed a buoy and light over the wreck. Although it is possible they would have suffered a greater loss than they did, if their property had not been interfered with, from the nature of the circumstances this is merely a matter of conjecture.

The justification based upon the theory that the removal of the wreck was essential to the safety of navigators generally is not warranted by the facts. The plea of necessity for the injury or destruction of another's property may be, under very special circumstances, a good justification. As an illustration, the destruction of property to prevent the spread of a conflagration in a city is lawful, when the act is done in good faith, and under an apparent necessity. Hale v. Lawrence, 23 N. J. Law, 590; Beach v. Trudgain, 2 Grat. 219; Surocco v. Geary, 3 Cal. 69. In such a case the danger is immediate, and there is no other practical alternative. In the present case the wreck could have been guarded temporarily, and then buoyed, and, if necessary, lighted.

We can find no ground upon which to relieve the Brinton from responsibility.

The decree of the district court is reversed, and the cause remanded, with instructions to decree for the libelants for such damages as they may have sustained, with costs, and costs of this court.