EDWARD BATES *vs.* WORCESTER PROTECTIVE DEPARTMENT.

Worcester.    October 3, 1900. — October 24, 1900.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & HAMMOND, JJ.

*Fire — Protective Department created by Statute — Liability for Negligence of Officers and Agents acting honestly and in Good Faith.*

After having assumed to interfere for the protection of property from damage at a fire in the performance of their duties under St. 1875, c. 234, entitled "An Act to incorporate the Worcester Protective Department," officers and agents may subject the corporation to a liability for their negligence in preventing the owner from saving his goods, or in failing to use reasonable care to protect them while keeping them in custody, even though they act honestly and in good faith.

TORT, for injury to the plaintiff's property by fire, and for conversion of the same. At the trial in the Superior Court, before *Aiken,* J., it appeared that the plaintiff was a dealer in pianos in Worcester; that the defendant was a corporation organized under St. 1875, c. 234, entitled "An Act to incorporate the Worcester Protective Department"; that the defendant's agents consisted of a superintendent and nine men called the fire patrol, who attended fires and covered personal property with rubber blankets before the fire reached the property, and that the expenses of the defendant were met in part by the fire insurance companies doing business in

Worcester, by contributions amounting to about $6,000, and that the city of Worcester contributed, from moneys raised by taxation, the further sum of $2,400 for the purpose; that the fire began at 3.45 A. M. March 5, 1897, in Day's Block on Main Street, and the property of the plaintiff, which was situated in a store on Walnut Street, was not burned until about 6 A. M.; that there was ample time and opportunity, and that the plaintiff had sufficient force present, to remove the plaintiff's property after the fire started on Main Street, and before it reached the store of the plaintiff on Walnut Street, and that the defendant's agents prevented its removal, ordered the plaintiff away from his property, shut the door to the store, and prevented the plaintiff from re-entering thereafter until his property was burned and totally destroyed.

The defendant's agents, consisting of two members of the fire patrol, denied that they prevented the plaintiff from removing his property, but admitted that they entered the store of the plaintiff, and covered his property at the request of the plaintiff, and that all they did in the premises was done with an honest purpose, in good faith, to protect life and property.

The plaintiff testified that he arrived at his store at 3.45 A. M., that there was no fire there at the time, and that the fire, which was then on Main Street, was confined to that part of the building, but that, to protect the pianos from water, he asked the fire patrolmen to enter his premises and protect his property and to cover them with the blankets which they use at fires for such purposes, until his brothers arrived to help remove them; that the fire patrolmen covered his pianos at about 4 A. M., when his brothers arrived and attempted to remove the pianos by pushing them towards the door of the store, but that the fire patrolmen stopped them and told them to leave the pianos and get out of the store; that thereafter the patrolmen shut the door of the store and stood in front of it; that the plaintiff then went to find the defendant's superintendent to get permission to remove his goods, but was unable to find him; that he came back to his store and was refused permission to enter by the fire patrolmen who stood in front of his store and prevented him from entering, and that he was kept out of his store until six o'clock, when the fire reached there.

No express directions were given the defendant or its agents to interfere with the plaintiff's property in any way whatever by the fire department or any officer thereof. The chief of the fire patrol, who was the defendant's superintendent, testified that he gave no orders or directions to interfere with or prevent the plaintiff from removing his property.

There was also evidence from several disinterested parties who testified that the fire patrolmen refused to allow the plaintiff to remove his property, and two of the plaintiff's brothers testified that they were prevented by the fire patrol who stood between them and the plaintiff's pianos in such a manner as to prevent their removal when they tried to remove them, and that the manner of the fire patrol was " bulldozing," and that the plaintiff's brothers were intimidated by their attitude and speech when they told them " to let the pianos alone," and " get out of the store," and stood between them and the pianos.

There was also evidence that the vestry of the church opposite the plaintiff's store was opened and put at the plaintiff's disposal for storing his pianos from and during all the time while the fire was burning on Main Street, until it had reached Walnut Street and the plaintiff's store.

There was no evidence in the case that showed why the plaintiff did not remove his pianos between the hours of 4 and 6 A. M., except the action of the fire patrol. There was evidence, however, from the defendant that the progress of the fire was such as to make it impossible to remove the plaintiff's goods, and to render it dangerous to life to remain on the plaintiff's premises after the arrival of the fire patrol. The plaintiff requested the court to rule that if the defendant's agents took possession of the property of the plaintiff under the authority of the corporation before the fire reached the premises of the plaintiff, they were bound to exercise their power with due regard for the rights of the plaintiff in preserving it from destruction by fire ; and if they negligently or wantonly failed to remove the same from the building, and kept the possession and control of the plaintiff's store, while there was time to remove it, and while it could have been removed to the exclusion of the plaintiff, and the property was thereby lost or destroyed by fire, the defendant would be liable.

The judge instructed the jury (1) that if the defendant's agents, the fire patrol, prevented the removal of the property, the plaintiff could recover; and (2) that if the defendant's agents, the fire patrol, took possession of the plaintiff's property and negligently failed to remove it, the plaintiff could recover.

To these instructions no exception was taken.

The judge further instructed the jury as follows, namely: "If your conclusion is, however, that the patrolmen did prevent the saving of this property, or that they did assume control of it, and failed to remove it, then this consideration comes up before you: if the patrolmen, in doing what you find they did, acted under the authority of the fire department of Worcester or its officers, the defendant is not liable. If what the patrolmen did or omitted to do was under the direction of the fire department of the city or its officers, then the protective association, the defendant in this case, is not responsible. If the patrolmen were not acting under the fire department, and in doing what they did acted honestly, in good faith, the protective association is not liable, even if the patrolmen erred in their judgment. It was incumbent upon the fire patrol, at this fire, as at any fire, to act with an honest purpose according to their best judgment. If they did that, the protective department is exonerated from all liability. The plaintiff, in order to recover, must satisfy you by a fair preponderance of evidence that the patrolmen, in what they did or in what they omitted to do, acted wilfully, wantonly, and with a reckless disregard of the rights of the plaintiff in regard to his property, and but for that conduct the property could have been saved."

To these instructions given, in so far as inconsistent with the ruling asked for as above, the plaintiff alleged exceptions.

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

*W. A. Gile,* for the plaintiff.

*H. Parker,* for the defendant.

KNOWLTON, J. The defendant is a corporation organized under the St. of 1875, c. 234, for the discovery and prevention of fires, and the protection of property from damage by fire. This suit is brought to recover for the destruction by fire of the plaintiff's stock of pianos and other goods in a music store,

which the defendant's servants are alleged to have taken into their control and negligently to have suffered to be destroyed and negligently to have prevented the plaintiff from saving.

We understand the last part of the instructions to the jury to be a modification of the first part, and to limit the liability of the defendant as it was broadly stated in the beginning. This limitation was in these words: "It was incumbent upon the fire patrol at this fire, as at any fire, to act with an honest purpose, according to their best judgment. If they did that, the protective department is exonerated from all liability. The plaintiff, in order to recover, must satisfy you by a fair preponderance of evidence that the patrolmen, in what they did or in what they omitted to do, acted wilfully, wantonly, and with a reckless disregard of the rights of the plaintiff in regard to his property, and but for that conduct the property could have been saved." The question presented by the bill of exceptions is whether this corporation, after having assumed to interfere for the protection of property from damage at a fire, is liable for negligence in preventing the owner from saving his goods, or in failing to use reasonable care to protect them while keeping them in custody.

That this is not a public charitable corporation, and that it is liable for the negligence of its servants, was settled in *Newcomb* v. *Boston Protective Department*, 151 Mass. 215. The statute incorporating this defendant is like that creating the Boston Protective Department. The only ground that we see on which it reasonably could be held that this defendant should be liable only for wilful, reckless, or wanton misconduct in cases where it actually interferes to control the management of the property exposed, and to prevent the removal of it by the owner, would be that the Legislature intended to give it a place of public authority, with power, as a tribunal acting through agents and servants, to determine finally the methods to be adopted for the protection of property, and then to use these methods to the exclusion of the owner, and to do all this without a hearing, and without responsibility for the consequences, so long as these servants and agents act in good faith in the honest exercise of their judgment, even though they may be negligent in forming or executing their plans.

In cases of exigency, and for the public welfare, we may assume the existence of a power in the Legislature, in the exercise of a right founded on necessity, to authorize the destruction of property, even without compensation. In cases of overpowering necessity, as to prevent a great conflagration, it has often been said that private property may be destroyed by private persons without a liability in damages, and without statutory authority for such action. Assuming without deciding that this is the case, there is exemption from liability in these latter cases only when the facts, as afterwards determined by a competent tribunal, show an actual necessity for the destruction to prevent a great public calamity. *Taylor* v. *Plymouth*, 8 Met. 462. *Miller* v. *Horton*, 152 Mass. 540. *Russell* v. *New York*, 2 Denio, 461. *Hale* v. *Lawrence*, 1 Zabr. 714. *Philadelphia* v. *Scott*, 81 Penn. St. 80. *Surocco* v. *Geary*, 3 Cal. 69. Whether the destruction of property by public officers under the authority of a statute, as a means of preventing the spread of a fire, is merely a regulation of these rights created by necessity, which properly is referable to the police power, and which requires no provision for compensation, or whether it can be done only in the exercise of the right of eminent domain, and with a provision for compensation, is a question upon which authorities differ. See Pub. Sts. c. 35, §§ 3, 5. *Miller* v. *Horton*, 152 Mass. 540, and cases above cited. Cooley, Const. Lim. (5th ed.) 65, n. However that may be, recent legislation in this State and elsewhere has generally made provision for compensation whenever authority is given which, during a fire, may subject one's property to sacrifice for the public good.

If it were intended in this statute to subject the property of individuals to the control and management of the defendant corporation during a fire, with a risk of loss through the negligence of its servants or agents, we should expect a provision for compensation to persons who, through their negligence or their supposed regard for the interests of others, might suffer unnecessarily. As was pointed out in *Newcomb* v. *Boston Protective Department*, 151 Mass. 215, this corporation was not organized in the interest of the general public, but in the interest of insurers of property, and much more, therefore, should we expect a statutory provision for compensation in case of

unnecessary loss, if this corporation were given the control of property without liability for negligence. The absence of such a provision indicates that the Legislature intended to leave the defendant liable at common law to those who suffer in their property from its negligent manner of doing that which it undertakes to do. Another consideration looking in the same direction is the fact that the defendant is not given authority or power to control those engaged in extinguishing fires, for it is provided " that nothing in this act shall be so construed as to lessen in any way the authority of the officers or members of the Worcester fire department, or to warrant or justify any interference with them in the performance of their duties." St. 1875, c. 234, § 2. By § 9 of an ordinance of the city of Worcester relating to the fire department, the chief engineer is given sole command over other engineers and the officers and members of the fire department and all other persons who may be present at fires, and is required to " direct all proper measures for the extinguishment of fires, protection of property, preservation of order, and observance of the laws, ordinances, and regulations respecting fires." The statute also provides that nothing in it shall " in any way justify the owner of any building or personal property in the abandonment of his property." Considering all the provisions of the act together, we are of opinion that the agents and servants of the defendant are not public officers who are given jurisdiction to manage and control the property of individuals at fires to their possible detriment, without liability for negligence.

The question, what might constitute negligence in a case of this kind, is not raised by this bill of exceptions, and we do not decide it. The statute does not impose upon the defendant any primary duty to property owners to save their property from destruction or damage by fire or water. It gives power to the officers and employees to enter buildings " to protect and save life and property therein, and to remove such property, or any part thereof, at or immediately after a fire," but it leaves upon the owner the primary obligation to do what ought to be done for the preservation of it. Whether the power given by the statute in reference to property is paramount to that of the owner we need not now decide. We only decide that in doing

that which they undertake to do in the performance of their duties under the statute, officers and agents of the defendant may subject the corporation to a liability for their negligence, even though they act honestly and in good faith.

*Exceptions sustained.*