[No. B021974. Second Dist., Div. One. Feb. 23, 1988.]

CITY OF LOS ANGELES, Plaintiff and Appellant, v. SHPEGEL-DIMSEY, INC., Defendant and Respondent.

1014

COUNSEL

James K. Hahn, City Attorney, Pedro B. Echeverria and Edward J. Perez, Assistant City Attorneys, for Plaintiff and Appellant.

Alan Rosenberg and Douglas C. Wicks for Defendant and Respondent.

OPINION

SPENCER, P. J.—

INTRODUCTION

Plaintiff City of Los Angeles appeals from a judgment entered in favor of defendant Shpegel-Dimsey, Inc.

STATEMENT OF FACTS

Defendant does business as Pioneer Plastics at several adjacent premises in Los Angeles. The premises are used primarily for the conversion of scrap plastic into plastic pellets by a process known as extrusion. Defendant maintains large indoor and outdoor storage areas for scrap plastic materials.

Plaintiff's Fire Code contains a number of regulations detailing the requirements for the storage of combustible materials, including plastics, both indoors and outdoors. During a 10-year period running through May 1980, defendant received approximately 55 citations for violations of the Fire Code; during the same period, 3 fires ignited on defendant's premises.

Defendant was aware of the Fire Code violations and generally neglected or refused to correct the cited conditions. Specifically, defendant received notice on March 27, 1980, of several Fire Code violations, including the

violation of section 57.57.20, which governs the outdoor storage of combustible materials such as defendant's scrap plastic. The notice described with particularity the manner in which defendant's outdoor storage of these materials failed to comply with the Fire Code and ordered the correction of this condition and all other cited conditions. A reinspection on April 3 found no corrective work had been done on any of the violations and a second reinspection on April 11 found no effort to correct the violation of section 57.57.20.

The plastic materials stored on defendant's premises do not spontaneously combust, but ignite readily, then burn rapidly and intensely, thus causing a fire to spread quickly and increase substantially in magnitude if the materials are stored improperly and the fire is not promptly extinguished. When burning, these plastics produce smoke, noxious fumes, gases and odors offensive to the senses; these conditions have adverse effects on human beings which may result in death.

On May 29, 1980, in the late evening hours, a fire ignited on the premises. It quickly reached a magnitude which required the response of 131 firefighters and 45 fire vehicles. The size and intensity of the fire resulted in the release of considerable smoke, noxious fumes, gases and offensive odors. The fire caused an obstruction to the free use of adjacent property and to the free passage of surrounding streets. The size and intensity of the fire affected the entire neighborhood.

The fire escaped from defendant's premises and damaged plaintiff's utility poles, conductors and fixtures. The cost of repairing the damaged property was $1,155.92. Had defendant complied with the outdoor storage requirements of Fire Code section 57.57.20, the fire would have been confined to a small area and would not have spread throughout and beyond the defendant's premises. The approximate cost to plaintiff of extinguishing the fire was $204,414.

On two other occasions, prior to March 27, 1980, defendant also had violated the outdoor storage requirements of section 57.57.20. Following the March 27, 1980, violation and resulting two reinspections, defendant was prosecuted in a criminal proceeding, entered a plea of nolo contendere and was fined.[1]

---

[1] The instant matter was tried on stipulated facts and the trial court determined all issues as questions of law, resolving no factual questions.

## CONTENTIONS

### I

Plaintiff contends the trial court erred in granting judgment in favor of defendant, in that the fire hazard on defendant's property clearly constituted a public nuisance, thereby entitling plaintiff to the recovery of fire abatement costs.

### II

Plaintiff asserts the trial court also erred, in that plaintiff is entitled to recover fire suppression costs pursuant to Health and Safety Code sections 13008 and 13009.

### III

Plaintiff avers the trial court further erred in granting judgment in favor of defendant, in that plaintiff was entitled to recover damages as a property owner specially injured by a hazardous condition created by defendant.

### IV

Finally, plaintiff contends it is entitled to seek the recovery of punitive damages.

## DISCUSSION

### I

Plaintiff contends the trial court erred in granting judgment in favor of defendant, in that the fire hazard on defendant's property clearly constituted a public nuisance, thereby entitling plaintiff to the recovery of fire abatement costs. We disagree.

Unquestionably, the maintenance of a fire hazard sufficiently extreme to menace public health and safety constitutes a public nuisance within the meaning of Civil Code section 3480. (*People* v. *Wing* (1905) 147 Cal. 382, 383 [81 P. 1104]; *City & County of San Francisco* v. *Meyer* (1962) 208 Cal.App.2d 125, 131 [25 Cal.Rptr. 99]; *County of San Diego* v. *Carlstrom* (1961) 196 Cal.App.2d 485, 490-491 [16 Cal.Rptr. 667].) Moreover, where such a condition exists, the public entity has a right to summarily abate the nuisance, particularly in the face of an emergency. (*Surocco* v.

*Geary* (1853) 3 Cal. 69, 73; see also *Thain* v. *City of Palo Alto* (1962) 207 Cal.App.2d 173, 179 [24 Cal.Rptr. 515].) ■ A municipality generally even has the power to provide by ordinance for the summary abatement of the public nuisance and for the recovery of abatement costs. (*Id.,* at pp. 188, 189; see also Gov. Code, §§ 38773, 38773.5; *People* v. *Wing, supra,* 147 Cal. at p. 383.)

■ The stipulated facts upon which the instant matter was tried established unequivocally defendant's repeated failure to comply with plaintiff's fire code provisions governing the storage of plastic materials; "[h]ad defendants . . . maintained the premises in compliance with Fire Code section 57.57.20 the fire which ignited on . . . May 29, 1980 would have been confined to a small area and would not have spread throughout the premises." By reasonable inference, the spreading of the fire posed a clear threat that it could not be confined to the premises. It is undisputed the fire did, indeed, escape from the premises. These facts support no reasonable conclusion but that defendant's failure to comply with the pertinent fire code provisions and the resultant rapid spreading of an otherwise easily contained fire posed an extreme threat to the general public health and safety. Hence, these conditions were a public nuisance subject to abatement.

■ However, there is no evidence in the instant matter that plaintiff had enacted any ordinance providing for the summary abatement of such a nuisance and the recovery of abatement costs. Plaintiff correctly notes the remedies against a public nuisance include abatement (Civ. Code, § 3491, subd. 3; Code Civ. Proc., § 731), but as noted in *County of San Luis Obispo* v. *Abalone Alliance* (1986) 178 Cal.App.3d 848 [223 Cal.Rptr. 846], review denied June 24, 1986, the above statutes do not authorize the recovery of expenses incurred in abating the nuisance. ■ " 'The state can never sue in tort in its political or governmental capacity, although as the owner of property it may resort to the same tort actions as any individual proprietor to recover for injuries to the property . . . . [Citation.]' " (At p. 859.)

■ In reaching this conclusion, the court stated: " 'It is critically important to recognize that the government's decision to provide tax-supported services is a legislative policy determination. . . . Furthermore, it is within the power of the government to protect itself from extraordinary emergency expenses by passing statutes or regulations that permit recovery from negligent parties. [Fn. omitted.]' [Citation.]" (*Ibid.*) Accordingly, "in the absence of a statute expressly authorizing recovery of public expenditures [i.e., police, fire and other emergency services], 'the cost of public services for protection from fire or safety hazards is to be borne by the public as a whole, not assessed against the tortfeasor whose negligence creates the need for the service.' [Citation.]" (*Id.,* at p. 858.)

Noting Code of Civil Procedure section 731, "the general provision permitting government entities to abate public nuisance, has been squarely held *not* to authorize the government to recover the costs of abatement," the court thus holds, "counties cannot obtain damages for abating a public nuisance because the statutory scheme does not authorize them to do so." (178 Cal.App.3d at p. 860, citation and fn. omitted, italics original.) Absent both general statutory authority and authority conferred by local ordinance, it necessarily follows plaintiff was not entitled to the recovery of fire abatement costs.

## II

Plaintiff asserts the trial court also erred, in that plaintiff is entitled to recover fire suppression costs pursuant to Health and Safety Code sections 13008 and 13009. Again, we disagree.

Health and Safety Code section 13008 provides in pertinent part: "Any person who allows any fire burning upon his property to escape to the property of another, whether privately or publicly owned, without exercising due diligence to control such fire, is liable to the owner of such property for the damages *to the property* caused by the fire." (Italics added.) Accordingly, to the extent plaintiff could prove defendant failed to exercise due diligence to prevent the spread of the fire beyond the confines of defendant's premises, section 13008 provides a basis for the recovery of damages for injury caused to the property, but nothing more.

At the time the fire at issue was ignited, on May 29, 1980, Health and Safety Code section 13009, subdivision (a), provided in pertinent part: "Any person who negligently, or in violation of the law, *sets* a fire, *allows* a fire to be set, or *allows* a fire *kindled* or *attended* by him to *escape onto any forest, range or nonresidential grass-covered land* is liable for the expenses of fighting the fire and such expense shall be a charge against that person. . . ." (As amended by Stats. 1978, ch. 1118, § 1, p. 3422; italics added.)[2] Clearly, defendant comes within none of the

---

[2] Plaintiff notes subdivision (a) of Health and Safety Code section 13009 was amended by Statutes 1987, chapter 1127, section 1 to make persons such as defendant unequivocally liable for fire suppression costs following a failure or refusal to correct a fire hazard prohibited by law. There is nothing in the amendment indicating a legislative intent that it apply retrospectively: "As a general rule, legislation looks to the future and is prospective in application. [Citations.]" (*Ponce* v. *Graceous Navigation, Inc* (1981) 126 Cal.App.3d 823, 827 [179 Cal.Rptr. 164].) Hence, it is presumed an amendment to a statute operates prospectively unless the Legislature has expressly stated the contrary or, after considering all pertinent factors, there is clear indication of a legislative intent that the statute operate retrospectively. (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 587 [128 Cal.Rptr. 427, 546 P.2d 1371].) In determining this issue, it is appropriate to consider whether the purpose of the amendment would be

classes of persons held liable and plaintiff's property comes within none of the classes of property protected by section 13009, subdivision (a). Unequivocally, this provision gives plaintiff no entitlement to the recovery of general fire suppression costs.

■ Plaintiff nevertheless insists it had a right to recover those costs pursuant to common law. It is well settled that "an action to recover fire suppression costs [not incurred in protecting one's own property] is a creature of statute . . . ." (*People* v. *Southern Cal. Edison Co.* (1976) 56 Cal.App.3d 593, 603 [128 Cal.Rptr. 697].) Hence, the right to recover *all* fire suppression costs resulting from negligence in allowing a fire to spread is now strictly limited to that provided in Health and Safety Code section 13009. (*United States* v. *Morehart* (9th Cir. 1971) 449 F.2d 1283, 1284.)

### III

■ ■ Plaintiff avers the trial court further erred in granting judgment in favor of defendant, in that plaintiff was entitled to recover damages as a property owner specially injured by a hazardous condition created by defendant. We agree.

Plaintiff sought recovery pursuant to Civil Code section 3493[3] and on a negligence theory in addition to the general public nuisance theory. ■ Civil Code section 3493 provides no authority for plaintiff, a public entity rather than a private party, to recover damages for a "specially injurious" public nuisance; neither does any other statute authorize such recovery. ■ However, Public Utilities Code section 10251 provides plaintiff with a right of action for negligent injury.

■ As noted *ante,* the stipulated facts clearly establish defendant's repeated failure to comply with the outdoor storage provisions of plaintiff's Fire Code section 57.57.20 and, had they so complied, "the fire which ignited on . . . May 29, 1980 would have been confined to a small area and

served significantly by its application to transactions which preceded the change and the principle that retrospective imposition of increased liabilities is to be carefully avoided. (*Western & Southern Life Ins. Co.* v. *State Bd. of Equalization* (1970) 4 Cal.App.3d 21, 34 [84 Cal.Rptr. 88].)

There is no express language or other indication in the history of any of the amendments to section 13009 which denotes a legislative intent that the amendments apply retrospectively. There appears to be no way in which the retrospective application of those amendments would further their purpose, and finally, there is no question but that the amendments in question increase liabilities. Accordingly, there is no ground for the rebuttal of the presumption of prospective application. (*In re Marriage of Bouquet, supra,* 16 Cal.3d at p. 587.)

[3] Civil Code section 3493 authorizes a private party to maintain an action for damage suffered as a result of a public nuisance, "if it is specially injurious to himself, but not otherwise."

would not have spread throughout the premises." Those facts further establish the "fire escaped from the premises and as a result utility poles, conductors and fixtures, owned and maintained by [plaintiff] were damaged. The cost of repairing said damaged equipment was $1,155.92." There can be no doubt plaintiff has clearly established defendant's per se breach of duty.

Where an ordinance or statute is intended to protect a certain class from a particular risk of harm, the violation of that statute or ordinance is per se a breach of duty, in the absence of any excuse or justification for the violation. (*Vesely* v. *Sager* (1971) 5 Cal.3d 153, 164 [95 Cal.Rptr. 623, 486 P.2d 151]; *Satterlee* v. *Orange Glenn School Dist.* (1947) 29 Cal.2d 581, 588 [177 P.2d 279].) The evidence presented below shows plastic materials of the type stored by defendant do not spontaneously combust, but in the presence of fire ignite quickly and burn fiercely if not properly stored, thereby causing a fire of increasing magnitude to spread rapidly. Obviously, the increased size and ferocity of a fire resulting from the presence of improperly stored materials of this sort vastly enhances the risk to adjacent property owners. Hence, it is clear Fire Code section 57.57.20 is intended at least in part to protect that class from an increased risk of injury to their property. Indisputably, plaintiff falls within the protected class and faced the anticipated risk of harm.

However, to recover under a theory of negligence per se, the injury suffered must have been proximately caused by the hazardous condition or the violation of statute. (*Casey* v. *Russell* (1982) 138 Cal.App.3d 379, 383 [188 Cal.Rptr. 18]; *Beaupre* v. *Nave* (1970) 13 Cal.App.3d 402, 406 [91 Cal.Rptr. 473].) Proximate causation exists where the condition or the violation of statute is a substantial factor in causing the injury; that is, there is reason to believe the absence of the condition or compliance with the statute would have prevented or lessened the likelihood of injury. (*Nunneley* v. *Edgar Hotel* (1950) 36 Cal.2d 493, 499 [225 P.2d 497].) In other words, as Dean Prosser put it, "If the defendant spills gasoline about the premises, he creates a 'condition'; but his act may be culpable because of the danger of fire. When [some other agency] ignites the gasoline, the condition has done quite as much to bring about the fire as the [other agency]; and since that is the very risk which the defendant has created, he will not escape responsibility." (Prosser, Law of Torts (4th ed. 1971) Proximate Cause, § 42, pp. 247-248.)

In the instant matter, the trial court found, as a matter of law, that defendant's storage of plastic materials in violation of Fire Code section 57.57.20 was not the proximate cause of plaintiff's injuries. (17) Proximate causation, or foreseeability of injury, "may be decided as a question of law only if, 'under the undisputed facts there is no room for a

reasonable difference of opinion.' [Citations.]" (*Bigbee* v. *Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 56 [192 Cal.Rptr. 857, 665 P.2d 947].) ■■■ Accordingly, the question posed is whether there is room for a reasonable difference of opinion as to whether the risk that a fire might vastly and rapidly spread due to defendant's wrongful storage of its particular plastic materials was reasonably foreseeable under the circumstances presented.

■■ As *Bigbee* notes, "it is well to remember that 'foreseeability is not measured by what is more probable than not, but includes whatever is likely enough in the setting of modern life that a reasonably thoughtful [person] would take account of it in guiding practical conduct.' [Citation.] . . . Moreover, it is settled that what is required to be foreseeable is the general character of the event or harm—e.g., [the vast and rapid spreading of fire beyond defendant's premises, due to the manner in which the plastics were stored]—not its precise nature or manner of occurrence. [Citations.]" (34 Cal.3d at pp. 57-58.) ■■ Hence, "[i]t is of no consequence that the harm to plaintiff came about through the negligent or reckless acts of [another]. 'If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby.' [Citations.]" (*Id.,* at pp. 58-59.)

■■ Given the undisputed facts plastics of the sort stored by defendant are prone to ignite quickly and burn fiercely, thereby promoting the rapid and substantial spreading of any fire when stored improperly, defendant's plastic materials were stored improperly, had been so stored repeatedly despite prior warnings, and two previous fires had occurred on defendant's premises, it cannot be said there is no room for a reasonable difference of opinion on foreseeability and, hence, causation. Clearly, defendant not only knew there was a reasonable likelihood some agency would start a fire on its premises, but knew its plastic materials had been and still were stored in violation of the law.

Given these unequivocal facts, a reasonable person might well infer defendant was aware of the inflammable characteristics of the plastics and thus could foresee the general character of the risk—the ignition of those materials in the event fire broke out and the consequent rapid spread of a fiercely burning fire. (*Bigbee* v. *Pacific Tel. & Tel. Co., supra,* 34 Cal.3d at pp. 57-58.) Certainly, a reasonable person might well conclude compliance with plaintiff's ordinance would have prevented or lessened the likelihood of injury to plaintiff's property. (*Nunneley* v. *Edgar Hotel, supra,* 36 Cal.2d at p. 499.) Accordingly, the trial court erred in finding as a matter of law an

absence of proximate causation; the contrary conclusion can be drawn as readily from these particular undisputed facts. It necessarily follows the trial court erred in granting judgment for defendant on the theory of negligence.

 Since the trial court must decide the issue of proximate causation as a question of fact, rather than law, giving due consideration to all the attendant circumstances, the question of recoverable damages requires scrutiny. Plaintiff is not limited to the cost of repair, but may seek recovery for the inconvenience caused by the injury (*Sturges* v. *Charles L. Harney, Inc.* (1958) 165 Cal.App.2d 306, 323 [331 P.2d 1072]) or loss of use (*Higgins* v. *L. A. Gas & Electric Co.* (1911) 159 Cal. 651, 662 [115 P. 313]). In other words, he may recover for all injury to the property proximately caused by defendant's negligence. (Pub. Util. Code, § 10251; Civ. Code, § 3333.)

## IV

 Finally, plaintiff contends it is entitled to seek the recovery of punitive damages. We disagree.

As plaintiff acknowledges, there is no California authority whatsoever expressly permitting a public entity to seek the recovery of punitive damages. Moreover, with one exception (see *Unified Sch. Dist. No. 490* v. *Celotex Corp.* (1981) 6 Kan.App.2d [629 P.2d 196, 207]), no other United States jurisdiction expressly permits such recovery.

There are sound bases for refusing to permit the recovery of punitive damages in the absence of express statutory authorization. First, as Civil Code section 3294, subdivision (a) clearly states, punitive damages are recoverable "for the sake of example and by way of punishing the defendant." A private party has no means of punishing a tortfeasor other than an award of exemplary damages. In contrast, a municipality has at its command the full force of its police power. By ordinance, it may impose fines or other penal remedies.

Second, Government Code section 818 bars any award of punitive damages *against* a public entity. Consequently, although there is symmetry in the law governing maintenance of an action for negligence, there would be asymmetry in the type of damages recoverable were a public entity permitted to seek an award of punitive damages. Thus, permitting a governmental entity to seek the recovery of punitive damages would raise serious questions of equal protection under the laws.

In addressing the constitutionality of section 818, *McAllister* v. *South Coast Air Quality etc. Dist.* (1986) 183 Cal.App.3d 653 [228 Cal.Rptr. 351]

considers the question thoroughly. The court first notes the majority rule, nationwide, bars the imposition of punitive damages against a governmental entity unless those damages are authorized specifically by statute; only a minority of jurisdictions allows them. (At pp. 656-657.) The court then examines the nature of governmental tort liability in California. In California, " 'there *is* governmental immunity *except* for the very specific areas in which the statutes allow[ ] suits. [Citations.] Since the enactment of [those] statutes . . . , courts have uniformly upheld them against constitutional attack and particularly against a classification challenge. [Citations.]' [Citation.]" (*Id.,* at p. 659, italics original.)

The court continues: "The equal protection clause 'does not prohibit legislative classification and imposition of statutory restraints on one class which are not imposed on another. *The classification is constitutionally infirm only if it bears no rational relationship to the achievement of a legitimate state objective.* State Legislatures are presumed to have acted within their constitutional powers despite the fact that, in practice, their laws result in some inequality. *A statutory discrimination will not be set aside as a denial of equal protection of the laws if any state of facts reasonably may be conceived to justify it.* [Citations.]' " (*Ibid.,* quoting from *Stanley* v. *City and County of San Francisco* (1975) 48 Cal.App.3d 575, 580-581 [121 Cal.Rptr. 842], italics original.)

The court also notes further: "When judged according to the foregoing principles, the California claims statute has been found to withstand constitutional challenges leveled against it: '[T]he classification made between governmental and nongovernmental tort victims may be said to have a fair and substantial relation to the object of the legislation and to promote a number of legitimate state interests.' [Citation.] This is in part because punitive damages, unlike compensatory damages, are not recoverable as a matter of right. [Citations.] The basic justification for a punitive award is to punish the offender and to deter others from committing similar wrongs. [Citation.] Punishment and deterrence being the principal reasons for allowing punitive damage awards, 'the courts have historically declined to allow it in actions against municipal corporations for torts committed by their employees.' [Citation.] In California, while the public employee may be liable for punitive damages, the public entity will not indemnify the employee. (Gov. Code, § 825.)

"As catalogued by the Florida Supreme Court in *Fisher* [v. *City of Miami* (Fla. 1965) 172 So.2d 455] at page 457, the public policy reasons which motivate the proscription against punitive damage awards appear sound: 'Since punishment is the objective, the people who would bear the burden of the award—the citizens—are the self-same group who are expected to

benefit from the public example which the punishment makes of the wrong-doer.

" 'Another aspect of the matter is the rule which permits evidence of the wealth of a tortfeasor as a measure of the amount of punitive damages which should be awarded. [Citations.] The theory is—the wealthier the wrongdoer, the greater the award. Otherwise stated, a relatively small sum might be adequate to punish a poor man. A much greater sum, for the same wrong, would be needed to punish a rich man. If this were allowed against municipalities, it would permit evidence of the unlimited taxing power as the measure of a proper verdict. This is often suggested as an adequate justification for denying an award of punitive damages against a city.

" 'The petitioner and amicus curiae recognize the evidentiary point last discussed. However, they urge that we hold for punitive damages but prohibit evidence of the wealth of the city. This apparent compromise would completely eliminate the punishment element which is a prime justification for the award at the outset. This is so because there would then be no guide to the jury regarding the amount necessary to administer effective punishment.

" 'The deterrence element likewise adds little justification for this type of award against a municipality. In the first place it is to be assumed that the municipal officials will do their duty and if discipline of a wrongdoing employee is indicated, appropriate measures will be taken without a punitive award.

" 'Further, a huge award against the City would not necessarily deter other employees who generally would be unlikely to be able to pay a judgment assessed against them personally.' " (*McAllister* v. *South Coast Air Quality etc. Dist., supra,* 183 Cal.App.3d at p. 660.)

The public considerations quoted above and deemed sound reasons for upholding Government Code section 818 against an equal protection attack do not support permitting a public entity to recover punitive damages from a private tortfeasor. To be sure, when a public entity is injured it is the people, the citizens, who are harmed; hence, the punishment by way of example of private individuals who intentionally harm the public interest should have a salutary effect, reducing the likelihood of future similar wrongs against the public interest. However, as noted *ante,* a municipality already possesses the power to punish without the right to pursue punitive damages. Moreover, it has the power to tailor this punishment to fit the offender, thereby enhancing the deterrent in promotion of the public interest. Since a municipality may exercise its police power to punish a

wrongdoer by way of example, its failure to do so should not be excused by providing the remedy of punitive damages. Hence, to permit a public entity to recover punitive damages for public injury from private tortfeasors while prohibiting a private party's recovery of those damages from a public entity, clearly raises the spectre of a denial of equal protection of the laws.

 The judgment is reversed and the matter is remanded for retrial on the theory of negligence and the amount of damages recoverable.[4] Each party to bear its own costs.

Lucas, J., and Devich, J., concurred.

---

[4]Defendant contends the instant appeal is frivolous. In view of the conclusions reached on appeal, it clearly is not.