[No. A057295. First Dist., Div. Four. July 28, 1992.]

CITY OF SANGER, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN
FRANCISCO, Respondent;
OCCIDENTAL CHEMICAL CORPORATION et al., Real Parties in
Interest.

## COUNSEL

Hoberg, Finger, Brown, Cox & Molligan, Stephen T. Cox, Peter Molligan and L. M. (Maria) Abel for Petitioner.

No appearance for Respondent.

Landels, Ripley & Diamond, Stephen C. Lewis, Bruce W. Laidlaw, Sanford Svetcov, Sedgwick, Detert, Moran & Arnold, Stephen Jones, Ann J. Reavis, Hardin, Cook, Loper, Engel & Bergez, Gennaro A. Filice III and Nicholas D. Kayhan for Real Parties in Interest.

## OPINION

ANDERSON, P. J.—The question we decide here is whether a municipality may pursue a claim for punitive damages. The superior court granted a defense motion for judgment on the pleadings and dismissed the claim. We grant a writ of mandate to reinstate the plaintiff's claim.

The City of Sanger (petitioner) is the sole remaining plaintiff in an action against Occidental Chemical Corporation and Occidental Petroleum Corporation, Shell Oil Company and Dow Chemical Company (real parties). The complaint alleges causes of action for negligence, nuisance, trespass, and

product defect on the ground that petitioner's water system was contaminated by "1, 2-dibromo-3-chloropropane" (DBCP) "manufactured, distributed, sold, used and/or transported" by real parties. The complaint alleges that the actions of real parties caused damages to petitioner in excess of $500,000. The complaint seeks punitive damages on the ground that real parties acted with knowledge of or in callous, conscious and/or reckless disregard of the fact that DBCP is toxic and dangerous to humans and that the chemicals would contaminate or destroy petitioner's property.

Real parties moved for judgment on the pleadings as to the prayer for punitive damages contending that punitive damages cannot be recovered by municipalities. Real parties relied on the case of *City of Los Angeles* v. *Shpegel-Dimsey, Inc.* (1988) 198 Cal.App.3d 1009 [244 Cal.Rptr. 507, A.L.R.4th 3639] in which the court held that "[s]ince a municipality may exercise its police power to punish a wrongdoer by way of example, its failure to do so should not be excused by providing the remedy of punitive damages. . . ." (*Id.* at pp. 1025-1026.) The motion was granted without leave to amend. A motion to reconsider was filed on the ground that petitioner does not possess sufficient police powers to regulate defendant chemical companies. The motion was accompanied by the declaration of the city attorney of the City of Sanger who declared that there are no ordinances of the City of Sanger which prohibit the use of agricultural chemicals on land located either within or outside the corporate limits of the city and that it is his opinion that the city does not have the authority to prohibit the use of agricultural chemicals on land located outside the corporate limits of the city.

The court denied the motion for reconsideration, reasoning that the court in *City of Los Angeles* had held that allowing punitive damages in favor of a city would be a denial of equal protection; this petition followed.

In *City of Los Angeles*, the city sued the defendant company, which manufactured plastic materials, for the costs of extinguishing a fire at the plastics plant, as well as for damage to the city's utility poles and other property. The city also sought punitive damages due to defendant's repeated violations of the city fire code over a 10-year period prior to the fire. The trial court granted judgment to the defendant as a matter of law and the city appealed. The appellate court reversed and remanded for a trial on the negligence theory of recovery but held that the city was not entitled to recover punitive damages.

The court reasoned as follows: "There are sound bases for refusing to permit the recovery of punitive damages in the absence of express statutory

authorization. First, as Civil Code section 3294, subdivision (a) clearly states, punitive damages are recoverable 'for the sake of example and by way of punishing the defendant.' A private party has no means of punishing a tortfeasor other than an award of exemplary damages. In contrast, a municipality has at its command the full force of its police power. By ordinance it may impose fines or other penal remedies.

"Second, Government Code section 818 bars any award of punitive damages *against* a public entity. Consequently, although there is symmetry in the law governing maintenance of an action for negligence, there would be asymmetry in the type of damages recoverable were a public entity permitted to seek an award of punitive damages. Thus, permitting a governmental entity to seek the recovery of punitive damages would raise serious questions of equal protection under the laws." (*City of Los Angeles* v. *Shpegel-Dimsey, Inc.*, *supra*, 198 Cal.App.3d at p. 1023, italics in original.)

We do not agree with the *City of Los Angeles* in either its statutory interpretation or its constitutional concerns. Its holding is inconsistent with the plain language of Civil Code section 3294 which provides that "the plaintiff" may recover punitive damages in appropriate cases. While the word "plaintiff" is not defined in section 3294—or in the chapter on damages of which it is a part (Civ. Code, § 3281 et seq.)—"plaintiff" is commonly understood by both the legal community and the general public to mean "the complaining party in any litigation . . . ." (Webster's New Internat. Dict. (3d ed. 1965) p. 1729; see also Black's Law Dict. (6th ed. 1990) p. 1150.) An example of the common usage occurs in the "Attachment" title of the Code of Civil Procedure where it is specifically codified: "Plaintiff" is defined as "a person who files the complaint or cross-complaint" (Code Civ. Proc., § 481.180) and a "person" is defined as "a natural person, a corporation, a partnership or other unincorporated association, and *a public entity*." (Code Civ. Proc., § 481.170, italics added.)

"It is settled that ' "We are required to give effect to statutes 'according to the usual, ordinary import of the language employed in framing them.' [Citations.]" ' [Citation.] Stated otherwise, 'When statutory language is thus clear and unambiguous there is no need for construction, and courts should not indulge in it.' [Citations.]" (*People* v. *Belleci* (1979) 24 Cal.3d 879, 884 [157 Cal.Rptr. 503, 598 P.2d 473].) Courts decline to follow the plain meaning of a statute only when to do so would inevitably frustrate the manifest purposes of the legislation as a whole or lead to absurd results. (*Ibid.*; *Cadiz* v. *Agricultural Labor Relations Bd.* (1979) 92 Cal.App.3d 365, 376-377 [155 Cal.Rptr. 213].) Furthermore, "[a] court may not read an exception into a statute unless it must be implied in order not to violate

an established rule of public policy." (*People* v. *Goodson* (1990) 226 Cal.App.3d 277, 282 [277 Cal.Rptr. 60].)

 The language of section 3294 is unambiguous and may not be read to limit recovery of punitive damages to private parties. As the court in *Westlands Water Dist.* v. *Amoco Chemical Co.* (9th Cir. 1991) 953 F.2d 1109, 1112, reasoned, "[t]he plain language of [Civil Code section] 3294 would allow *all* plaintiffs, both public and private, to recover punitive damages." Neither a frustration of the Legislative purpose or absurd consequences would result from following the plain language of the statute.

The purpose of punitive damages is spelled out in the section itself. Recovery of punitive damages is allowed "for the sake of example and by way of punishing the defendant." (Civ. Code, § 3294, subd. (a).) These purposes are advanced by the imposition of punitive damages even if the party against whom the punishment is imposed could have been, or actually already had been, punished through the exercise of the police power of a municipality.

We attach no significance to the failure of the Legislature to amend Civil Code section 3294 in response to *City of Los Angeles*. The case is recent and there is no showing that its holding was brought to the attention of the Legislature. No petition for review by the Supreme Court was filed and the case's holding and discussion of punitive damages have been cited only once and in a case disagreeing with its reasoning. (See *Westlands Water Dist.* v. *Amoco Chemical Co.*, *supra*, 953 F.2d 1109.) Furthermore, it is not clear that the *City of Los Angeles* based its holding on statutory construction rather than on equal protection grounds. Under these circumstances, no presumption arises that the Legislature agreed with a statutory construction at odds with the unambiguous statutory language.

 We do not agree that the equal protection concerns of *City of Los Angeles* are well founded. As explained by the court in *Georgie Boy Manufacturing, Inc.* v. *Superior Court* (1981) 115 Cal.App.3d 217, 222-223 [171 Cal.Rptr. 382], in addressing an equal protection challenge to the disallowance of punitive damages in wrongful death actions, " '[t]he general rule is that classifications made by government regulations are valid "if any state of facts reasonably may be conceived" in their justification [citations]. This yardstick, generally called the "rational basis" test, is employed in a variety of contexts to determine the validity of government actions [citations] and its *use signifies that a reviewing court will strain to find any legitimate purpose in order to uphold the propriety of the state's conduct.'* (Italics added.) [Citations.]"

■ Private parties, such as real parties here, are not given the same treatment in regard to punitive damages as are public entities. Under the legislative scheme, private parties may recover punitive damages and may be liable for punitive damages; public entities may recover punitive damages but are not liable for such. This scheme may lack symmetry, as the *City of Los Angeles* court observed, but it is not a denial of equal protection because a rational basis for the distinction exists. Requiring the public entity to pay punitive damages would punish the very group imposition of punitive damages was intended to benefit. This is the only distinction the statutory scheme makes and it has been held to be constitutional. (*McAllister* v. *South Coast Air Quality etc. Dist.* (1986) 183 Cal.App.3d 653 [228 Cal.Rptr. 351].) The fact that private parties and public entities are treated the same when they are plaintiffs also has a rational basis since requiring private parties to pay punitive damages regardless of whether the plaintiff is a public or private party furthers the goal of punitive damages, i.e., punishment and deterrence of wrongdoing. (See *Westlands Water Dist.* v. *Amoco Chemical Co.*, *supra*, 953 F.2d at p. 1113.)

Again, the fact that public entities may punish and deter wrongdoers through their police power does not persuade us to reach a contrary conclusion. That fact could, of course, persuade the Legislature to amend its statutory scheme to prohibit public entities from recovering punitive damages. It is not, however, a fact which renders unconstitutional the statutory scheme actually devised by the Legislature.

■ Recognizing that the trial court was bound by *City of Los Angeles*, petitioner defended against the motion for judgment on the pleadings by arguing that it did not have the power to regulate the conduct of real parties. Much of the briefing on this petition concerns such issues as the power of the City of Sanger to regulate conduct outside its territorial jurisdiction and the extent to which the state has preempted the regulation of water quality and agricultural pesticides. These questions illustrate the problem of applying the *City of Los Angeles* case beyond its facts. In *City of Los Angeles,* the city had an opportunity to punish, and did in fact punish, the very acts which underlay its claim for punitive damages. There were no questions as to the power or opportunity of the city to deter or punish. To apply the reasoning of *City of Los Angeles* to instances where the public entity has not acted to punish through its police power, requires the determination of factual and legal questions collateral to the main action. We do not reach these questions because we conclude that *City of Los Angeles* was wrongly decided. Whether a municipality has the power to punish and, if so, whether it exercised that power is irrelevant to the question of whether that municipality may pursue a claim for punitive damages.

Let a peremptory writ issue directing respondent court to vacate its order granting the motion for judgment on the pleadings and to issue a new order denying the motion.

Poché, J., and Perley, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied October 16, 1992. Lucas, C. J., Panelli, J., and Kennard, J., were of the opinion that the petition should be granted.